**PROGRAMMED TAX SYSTEMS, INC., Plaintiff,**

v.

**RAYTHEON COMPANY and Raytheon Data Systems Company, Defendants.**

**No. 76 Civ. 432 (CHT).**

United States District Court,
S. D. New York.

Oct. 17, 1977.

---

Kaufmann & Feit, New York City, for plaintiff; Jay W. Kaufmann, James Breslow, Andrew R. Simmonds, New York City, of counsel.

Kenyon & Kenyon Reilly Carr & Chapin, New York City, for defendants; Richard A. Huettner, Albert J. Breneisen, Michael J. Lennon, New York City, Richard M. Sharkansky, Raytheon Co., Lexington, Mass., of counsel.

## MEMORANDUM

TENNEY, District Judge.

In this action for trademark infringement, defendants Raytheon Company ("Raytheon") and its subsidiary Raytheon Data Systems Company ("Raytheon Data") have moved for summary judgment against the plaintiff Programmed Tax Systems, Inc. ("P.T.S."). For the reasons stated below, the motion is granted.

The facts and background of this case need not be discussed here, having been set out at some length in the opinion of this Court denying the plaintiff's motion for a preliminary injunction. *Programmed Tax Systems, Inc. v. Raytheon Co.*, 419 F.Supp. 1251 (S.D.N.Y.1976). Other than the statements required under Rule 9(g) of the General Rules of this Court, the parties have relied on the evidence already provided on the motion for a preliminary injunction. Thus, all that remains is for the Court to determine whether there exist genuine issues as to any material facts and whether the defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Having reexamined the evidence in the light of this standard, the Court concludes that there are no such genuine issues and that the defendant is entitled to judgment.

■ In order to succeed in a trademark infringement action, a plaintiff must show "a likelihood of confusion, mistake or deception arising in the market as a result of defendant's use of the mark registered to plaintiff." *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 353 (2d Cir.), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970). In evaluating whether such a likelihood of confusion exists, the court is instructed to consider a list of factors virtually identical to that considered by the Court in its earlier opinion on the issue of the likelihood of the plaintiff's success on the merits. *Compare id.* at 354 *with Programmed Tax Systems, Inc. v. Raytheon Co., supra*, 419 F.Supp. at 1253. The court of appeals has further stated that the existence of some minor issues of fact with respect to one or two of these factors should not interfere with the granting of summary judgment where a weighing of all the factors convinces the court that no consumer or professional buyer of the defendants' product could "possibly mistake the source of the . . . goods by believing that they were manufactured by plaintiff." *B & L Sales Associates v. H. Daroff & Sons, Inc., supra*, 421 F.2d at 354. Such is indeed the case here.

The essential weakness of the plaintiff's claim of infringement, apparent upon the motion for a preliminary injunction, is even clearer at this point in the litigation. The facts upon which this Court based its earlier opinion that "the plaintiff's case has little likelihood of success on the merits," *Programmed Tax Systems, Inc. v. Raytheon Co., supra*, 419 F.Supp. at 1253–55, are now deemed admitted as a result of the plaintiff's failure to controvert the Defendants' Rule 9(g) Statement. Thus, the Court's earlier analysis of the strength of the plaintiff's claim, taken together with the analysis of the Plaintiff's Rule 9(g) Statement which follows, demonstrates that there is no likelihood of confusion arising from the defendants' use of a mark for their computers which is similar to that used by the plaintiff for its tax preparation service.

In its Rule 9(g) Statement, the plaintiff has stated what it considers to be seven "material facts" as to which "there is a

genuine issue to be tried." Six of the seven, however, are neither at issue nor material to the case, and the seventh, which attempts to assert the presence of "actual confusion," is supported by evidence which is either inadmissible hearsay or inherently weak even when read in the light most favorable to the plaintiff. These statements will be analyzed in the order in which they appear in the Plaintiff's Rule 9(g) Statement:

 "1. Certain of plaintiff's clients have been actually confused and/or misled as to the origin of plaintiff's and defendants' goods and services." The evidence to sustain this point is supplied in statements of Royce Kanofsky, the plaintiff's Executive Vice President:

> "[O]n or about the beginning of December, 1975, I received phone calls from Morton Cohen of Cohen & Kutner, Marvin Levine of Urboat & Levine, Stan Hochhauser of Benson & Hochhauser and Alan Levine, C.P.A. The telephone conversations concerned Raytheon's advertising.
>
> "The above-named individuals stated either that they, or someone in the firm, had seen Raytheon's ad in Computer World and wanted to know if we were now in the business of leasing computers, were manufacturing mini-computers, selling terminals for Raytheon or had written the programming for Raytheon."

> Affidavit of Royce Kanofsky, sworn to April 10, 1976, at 7.

That part of the statement in Kanofsky's affidavit which is not inadmissible hearsay[1] is not strongly supportive of the assertion in the Rule 9(g) Statement, even when questions of its credibility are put aside.[2]

It is clear from the statements as they are described in the Kanofsky affidavit that the persons with whom Kanofsky spoke were not so much confused or misled about the origin of the various goods and services in question as they were curious as to a possible relationship between P.T.S. and Raytheon. Of the four questions cited by the affidavit, two were directed to the existence of such a relationship. Moreover, the fact that the declarants appear from the affidavit to have identified the source of the computers in the ad as Raytheon, as indeed they could not reasonably have failed to do,[3] indicates that they were not actually confused or misled about that source.

 In his deposition Kanofsky was able to clarify the contents of one of the conversations:

> "I recall that Mr. Cohen said that he was interested in the computer that we were offering. He wanted to know how it compared to the current services that we were offering and that he was using." Kanofsky Deposition at 140.

---

1. Fed.R.Civ.P. 56(e) requires affidavits to be made on "personal knowledge" and to set forth "such facts as would be admissible in evidence." Kanofsky's citations of statements made to him by others, insofar as they are offered for the truth of the matter asserted therein, are clearly hearsay and thus inadmissible unless they come within an exception to the hearsay rule. Fed.R.Evid. 801–02. Such an exception is available for the statements of those "declarants" who were describing to Kanofsky their "then existing state of mind," *i. e.,* their confusion. *Id.* 803(3). However, insofar as any declarant was informing Kanofsky about the state of someone else's mind, as appears to have been the case for one or more declarants, the state-of-mind exception would not be available.

2. The Court is not allowed to consider the credibility of sworn statements upon a motion for summary judgment. It should be noted, however, that Kanofsky was unable to clarify his affidavit during his deposition, except as to one conversation, Kanofsky Deposition at 139–40, 142, and that the plaintiff failed to supply the affidavits of any of the individuals mentioned in the Kanofsky affidavit, although such affidavits would have demonstrated clearly the existence of a genuine issue of material fact. The plaintiff stated only that "it is expected that these individuals will be available to testify on the issue of actual confusion." Plaintiff's Memorandum 16.

3. It is uncontested that "[d]efendant always prominently displays the name "Raytheon" in its advertisements and on the nameplates affixed to its Programable Terminal Systems." Defendants' Rule 9(g) Statement ¶ 10.

Taking this statement at face value, it is apparent that Mr. Cohen was indeed confused. However, it is not the purpose of the trademark statute to protect against *any* type of confusion which may arise from the use of similar trademarks. Rather, the confusion or deception with which the statute is concerned is that which affects the "market," *i. e.,* the purchasing and selling of the goods or services in question. *See Beer Nuts, Inc. v. King Nut Co.,* 477 F.2d 326, 328 (6th Cir.), *cert. denied,* 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973) ("Trademark protection guards the public from being deceived into purchasing an infringing unwanted product"); *B & L Sales Associates v. H. Daroff & Sons, Inc., supra,* 421 F.2d at 353; *Jean Patou, Inc. v. Jacqueline Cochran, Inc.,* 201 F.Supp. 861, 863 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir. 1963) (The trademark law's "fundamental purpose is to prevent a person from passing off his goods as the goods of another. The critical question is whether customers are, or may be, misled."). In this instance, the kind of confusion experienced by Mr. Cohen could not have affected the markets at issue here since, as discussed below and in this Court's earlier opinion, the service offered by the plaintiff and the product offered by the defendants are not in competition with each other nor do they appeal to the same class of purchasers. Mr. Cohen's confusion could not have affected the market for P.T.S.'s service unless it had led Mr. Cohen to discontinue his use of that service and to do his own tax preparation using one of Raytheon's computers. The possibility of such action is extremely remote and speculative and is belied by Mr. Cohen's own statement: he was interested in obtaining a service *from P.T.S.* and expressed a desire to learn about what he assumed to be a new mode of providing that service. Indeed, Mr. Cohen, having failed to see the clear Raytheon identification in the ad,[4] was not misled into contacting the defendants to discuss the purchase of one of their computers but actually called Kanofsky, an officer of the plaintiff, who obviously dispelled Mr.

Cohen's initial confusion about the source of defendants' computers.

 Finally, it must be noted that the law is clear that "actual confusion" is only one of many factors to be considered by the Court in determining the validity of an infringement claim, and that a minor dispute as to this one factor cannot defeat a motion for summary judgment where the court finds, on the basis of uncontroverted facts and upon an examination of all the relevant factors, that no "confusion, mistake or deception arising in the market" is likely.

 "2. The defendant's goods can be used to duplicate the plaintiff's services." This statement may be true in some absolute sense, but even a cursory examination will reveal that the possibility of such a relation is so exceedingly remote as to demonstrate its irrelevance in the context of this infringement claim. As was fully discussed in the Court's earlier opinion, *Programmed Tax Systems, Inc. v. Raytheon Co., supra,* 419 F.Supp. at 1254, the plaintiff and the defendants use the PTS mark to identify essentially different things. The plaintiff uses the mark to identify a *service,* the preparation of tax returns for professionals in the field. The defendants, on the other hand, use the mark to identify computers which are sold to companies which wish to use them to perform any of a number of functions. The plaintiff seeks to link the two products together by invoking a cloud of mystery surrounding the word "computers." However, even leaving to the side the diverse nature of the purchasers of these two products and the divergence in their two costs, it is apparent that no one could purchase defendants' computers with the thought that he was getting either plaintiff's tax preparation service or any other product of the plaintiff. The purchaser of the plaintiff's tax service gives up raw data and expects to receive back completed tax returns. He comes to the plaintiff for a complete service. While it is conceivable that "the defendants' goods" could be used "to duplicate the plaintiff's

4. *See* note 3 *supra.*

services," this could happen only if someone were to go out and purchase a Raytheon computer, hire someone to provide a specialized program and then perform its own tax preparation service using the computer which it had purchased. Since, however, Raytheon does not even list tax preparation as one of the possible functions of the computers at issue here, Defendants' Rule 9(g) Statement ¶ 25, such action would have to be entirely on the initiative of the purchaser who thus could not conceivably have been motivated by a misapprehension that he was buying a product from P.T.S. or that the product which he was buying from Raytheon was in any way connected with P.T.S.

"3. Defendants do not sell computer hardware alone, they also sell software and supply services." While the defendants do not contest this fact, Defendants' Reply Memorandum 6, they accurately assert its irrelevancy: since the plaintiff does not sell software or supply the kind of computer services which the defendants provide to purchasers of their computers, there is no similarity between the plaintiff's service and the defendants' product and thus no competition between the plaintiff and the defendants in this regard.

■ "4. Defendants failed to perform a trademark search prior to the use of the trademarks herein despite the fact their PTS line was considered by management to be a major new endeavor." The defendants' uncontroverted Rule 9(g) Statement demonstrates that the defendants adopted their PTS mark in good faith and that the U.S. Patent and Trademark Office ruled that the defendants' "PTS 100" trademark was entitled to registration. Defendants' Rule 9(g) Statement ¶¶ 32–35. The plaintiff cites no authority for the proposition that the defendants were under a duty to perform a trademark search before adopting their mark.

"5. The plaintiff's services can cost thousands of dollars when its services are employed by large accounting firms to do many tax returns." While this may be true, it cannot mask the basic cost differential between the two products. The fee charged by the plaintiff for the preparation of one set of tax returns is between $6.75 and $50.00. Defendants' Rule 9(g) Statement ¶ 14. The minimum price for the least expensive of the defendants' allegedly infringing computers is $6,000. *Id.* ¶ 27.

■ "6. The plaintiff has run a tutoring service; marketed a hand held mini-computer; operated a personnel agency; sold adding machines and ran a computer consulting firm. The plaintiff has been and can be a deversified [*sic*] computer operation having the capability to enter many different fields." These true facts are asserted to show that the plaintiff may "bridge the gap," admittedly wide, between its tax preparation service and the type of computer manufacturing engaged in by the defendants. Other facts disprove this capacity, however. For example, although the plaintiff maintains in Paragraph 7 of its Rule 9(g) Statement that its "small number of personnel . . . rises dramatically during the tax season," plaintiff normally employs only 26 employees. Plaintiff's Admission No. 8; Kanofsky Deposition at 30, 48–50. There is no evidence that such a small, essentially seasonal and service-oriented business will suddenly develop the sophisticated and highly expensive manufacturing capacity necessary to produce computers and thus "bridge the gap."

The Court therefore finds, on the basis of the uncontroverted facts of the Defendants' Rule 9(g) Statement and the Court's evaluation of the relevant criteria as set forth in its earlier opinion, that there is no likelihood of confusion arising from the use of similar marks for the plaintiff's tax service and the defendants' computers and that the plaintiff's claim of trademark infringement must fail. Accordingly, the defendants' motion for summary judgment is granted, and the complaint is dismissed.

So ordered.