**SOURCE SERVICES CORPORATION, Plaintiff,**

v.

**SOURCE TELECOMPUTING CORPORATION, Defendant.**

**No. 82 C 1702.**

United States District Court, N.D. Illinois, Eastern Division.

May 14, 1986.

Floyd A. Mandell, Katten Muchin Zavis Pearl & Galler, Chicago, Ill., for plaintiff.

George E. Bullwinkel, Burditt Bowles & Radzius, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff, Source Services Corporation, instituted this action against defendant, Source Telecomputing Corporation, alleging that defendant's use of service marks employing the word "source" violates sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); the Illinois Anti-Dilution Act, Ill.Rev.Stat. ch. 140, § 22; the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, §§ 311–317, and the common law of the State of Illinois. Presently pending before the Court is plaintiff's motion for summary judgment.

### I

Plaintiff, Source Services Corporation, is in the business of providing career guidance and personnel placement services.[1] As of November, 1982, Source Services operated through three divisions: Source Edp, Source Finance and Engineering Career Associates. The divisions specialize in the provision of career guidance and personnel placement services to, respectively, computing and data processing professionals, accountants and other finance professionals, and engineering professionals. Generally, plaintiff operates through soliciting applicants who it then attempts to place with client companies. If plaintiff is successful, its fee is paid by the client

---

1. The facts as outlined in Section I of the opinion are not in dispute.

company. Its services are free to the individual applicants.

Commencing in September, 1966, plaintiff began utilizing the service mark "Source Edp" in connection with its computer and data processing career guidance and placement activities. The service marks "Source Edp" and "Source Edp" plus a diamond-shaped logo were registered by the United States Patent and Trademark Office on May 28, 1968, as plaintiff's service marks for "providing career guidance and placement services for data processing personnel." [2] Pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, plaintiff has filed affidavits with the Patent and Trademark Office to make those service marks "incontestable." [3] Plaintiff has also registered, as of January 25, 1977, the service mark "Source Finance" for "employment agency services for accountants."

Defendant, Source Telecomputing Company, provides its customers computer time-sharing services through telephonic access to hundreds of data bases dealing with a wide variety of subject matters. The defendant does not create or maintain the individual data bases, but provides the means by which defendant's clients can gain access to those data bases. Defendant employs the service mark "The Source" in connection with the enterprise. This mark has been in use by defendant since June, 1979.

One of the data bases accessible through defendant's service is a listing of current employment opportunities in various fields, including computers and data processing. This data base is the creation of Computer Search International Corporation, which has no connection with defendant other than its provision of material accessible through defendant's service.

## II

### A. APPLICABLE PROCEDURAL LAW

The Seventh Circuit recently noted, in reversing the grant of summary judgment in another trademark action, that the burden imposed on a party moving for summary judgment is a heavy one. The Court noted that summary judgment

"is appropriate when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir., 1985) (quoting Fed.R.Civ.P. 56(c)); *see also Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464 [82 S.Ct. 486, 7 L.Ed.2d 458] (1962). "The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact." *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). Thus, "in determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." *Black*, at 1281 (quoting *Collins v. American Optometric Association*, 693 F.2d 636, 639 (7th Cir.1982)); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144 [90 S.Ct. 1598, 26 L.Ed.2d 142] (1970). "Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered...." *Big O*, 741 F.2d at 163. "[E]ven though there may be no dispute about the basic facts, still summary judgment will be inappropriate, if the parties disagree on the inferences which may reasonably be drawn from those undis-

---

2. The significance of the letters "Edp" in the "Source Edp" mark is unclear. In a submission to the Patent and Trademark Officer in connection with its registration efforts, plaintiff indicated the letters stand for "exclusively data processing." However, several of plaintiff's employees indicated in deposition testimony that they understand the acronym to stand for "electronic data processing."

3. "Incontestable status provides, subject to the provisions of § 15 and § 33(b) of the Lanham Act, 'conclusive evidence of the registrant's exclusive right to use the registered mark....' § 33(b), 15 U.S.C. § 1115(b)." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 660, 83 L.Ed.2d 582 (1985).

puted facts." *Central National Life Insurance v. F & D Co. of Maryland,* 626 F.2d 537, 539 (7th Cir.1980). "[T]he responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits." *American International Group, Inc. v. London American International Corporation Ltd.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975)).

*McGraw-Edison Company v. Walt Disney Productions,* 787 F.2d 1163, 1166–67 (7th Cir.1986).

As is noted below, the principal issue of fact to be resolved in this action is the likelihood of confusion between plaintiff's and defendant's service marks. As another district court has noted, the factors that must be evaluated in determining the likelihood of confusion [4] are often difficult to resolve through summary judgment.

By their very nature some of these factors are so hazy and grayish in nature that a summary judgment cannot be granted merely upon a perusal of affidavits, except in those rare instances where the facts are so black and white in nature that it can be stated unequivocally that there is no genuine issue as to any material fact and no issues to be resolved at a trial.

*National Color Laboratories, Inc. v. Philip's Foto Co., Inc.,* 273 F.Supp. 1002, 1004 (S.D.N.Y.1967) (citations omitted), quoted in 2 McCarthy, Trademarks and Unfair Competition § 32:37 (2d ed. 1984).

With these precepts in mind, the Court will proceed to the merits of plaintiff's motion.

## B. THE LANHAM ACT CLAIMS

■ Plaintiff has alleged, and moved for judgment upon, violations of sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. To recover under either section, the plaintiff must demonstrate "that the defendant has created a likelihood of confusion as to the origin of his product," *McGraw-Edison,* at 1167 or, as in this case, his service.

" 'Whether or not there is a likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods and services of the parties. A variety of factors may be material in assessing the likelihood of confusion.' " *Id.,* quoting *American International Group, Inc. v. London American International Corporation Ltd.,* 664 F.2d 348, 351 (2d Cir.1981). The Seventh Circuit has identified several factors that should be considered:

"the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another."

*Id.,* quoting *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.* 560 F.2d 1325, 1330 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). *See also, Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 934 (7th Cir. 1984). " 'None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved.' " *McGraw-Edison,* at 1167–68, quoting *Marathon Manufacturing Co. v. Enerlite Products Corp.,* 767 F.2d 214, 218 (5th Cir.1985). Excessive reliance on certain factors to the exclusion of others can be grounds for reversal. *Id., see also Piper Aircraft,* 741 F.2d at 934. The Court will address each of these factors.

---

**4.** A relatively comprehensive, but not exclusive, list of these factors, as identified by the Seventh Circuit, is found in the text at 5, *infra.*

### 1. The Degree of Similarity Between the Marks

 Exact similitude between allegedly confusing marks is not required to establish liability. *McLean v. Fleming,* 6 Otto 245, 251, 96 U.S. 245, 251, 24 L.Ed. 828 (1878). Each mark must be considered as a unit; individual elements should not form the basis of comparison. *Scandia Down Corp. v. Euroquilt, Inc.* 772 F.2d 1423, 1430–31 (7th Cir.1985). Moreover, "(s)ide-by-side comparison is not the test." *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir. 1976), *later appeal,* 572 F.2d 574 (7th Cir. 1978) (hereinafter *"Beefeater I"*). "The test is the consumers' state of mind when faced with the marks individually." *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 382 (7th Cir.1976), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

 Although marks must be considered as a whole, the dominant portion of a mark, if any, is entitled to greater weight in evaluating the likelihood of confusion due to its primary importance in creating a lasting impression upon the public. *See e.g., James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 572 F.2d 574, 577 (7th Cir.1978) (hereinafter *"Beefeater II"*). (District court in earlier proceedings failed "to give sufficient weight to the predominant feature of the marks in this case—the single word BEEFEATER."). *See also, Continental Scale Corp. v. Weight Watchers International, Inc.* 517 F.2d 1378, 1381–82 (C.C.P. A.1975), *General Foods Corp. v. Borden, Inc.,* 191 U.S.P.Q. (BNA) 674, 680 (N.D.Ill. 1976); *see gen.,* 2 McCarthy, Trademarks and Unfair Competition § 23:15 (2d ed. 1984).

 The plaintiff argues that no genuine issue of fact exists concerning the dominant nature of the word "source" in the plaintiff's marks, "Source Edp" and "Source Finance." Plaintiff points to the deposition testimony of Max-Hugh Settelen, a free-lance financial consultant from Montreal. Mr. Settelen testified that he knew of the defendant and its service

through contacts with other people in the computer industry and through reading various trade journals. While attending the Montreal Computer Show in the spring of 1982, Mr. Settelen saw a booth for plaintiff's company, of which he had no prior knowledge, and, according to his testimony, immediately associated the plaintiff with the defendant and its services marketed under the service mark "The Source." Mr. Settelen testified:

> I just saw the word "Source" out of my eye. And, you know, it triggered a memory that, "Yeah, yeah, they are here. Well, let's go and see what they have to say about their services."

Settelen deposition at 17. Pursuing this line of inquiry, defendant's attorney asked, and Settelen replied:

> Q. Do you recall whether there were any other letters or words besides the word "Source" in the sign?
>
> A. No, because rather like Source is, can one use the expression, a key word. The other words I don't recall because I wasn't interested. I mean, I didn't know that I should be differentiating because I wasn't aware when I first saw the sign that there was anything to differentiate between.

*Id.* at 18. Similarly, another non-party deponent, Michael Volpe, called the plaintiff's New York office after seeing one of plaintiff's ads in the New York Times. Mr. Volpe specifically remembered seeing the word "Source" in the ad but had no recollection of any other components of the service mark. *See,* Volpe deposition at 20. Finally, plaintiff notes that Karl Vogeler, one of plaintiff's employees, testified that many, if not most, of plaintiff's applicants and clients refer to plaintiff simply as "Source."

In response, defendant claims that the word "source" is commonly used in trade and service marks, *see,* text *infra* at 17, and is therefore weak and unlikely to be the dominant feature of a service mark in the eyes of the public. *Cf., Association of*

*Co-op Members, Inc. v. Farmland Industries, Inc.*, 684 F.2d 1134, 1142 (5th Cir. 1982), *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1428, 75 L.Ed.2d 788 (1983) (the word "co-op" is widely used and relatively weak and is therefore not likely, when used in a composite mark, to attract the public's attention); *Mr. Travel, Inc. v. V.I.P. Travel Service, Inc.*, 268 F.Supp. 958, 962 (N.D.Ill. 1966), *aff'd*, 385 F.2d 420 (7th Cir.1967) (The word "Mr." is used in many trademarks; therefore "one seeking to establish its saliency [*i.e.*, dominance] bears a heavy burden of proof.")

The Court finds the testimony of only two non-party witnesses insufficient to meet the plaintiff's burden of showing an absence of a genuine issue of fact as to the general public perception of the dominance of the word "source" in plaintiff's marks. Because of its origin and its conclusory nature, Mr. Vogeler's testimony is entitled to little weight. Therefore, and in light of the Court's conclusion that an issue concerning the strength of tradenames utilizing the word "source" exists, *see* text *infra* at 609–12, the Court concludes that a question of fact also exists as to the dominant portion, if any, of plaintiff's marks.

Without belaboring the obvious, the Court also notes that plaintiff's and defendant's marks are not identical, either in content or presentation. The sample advertising submitted by the parties indicates that defendant utilizes a thick block lettering style for its mark, with the word "the" running perpendicular to the letter "s" of "source". The plaintiff's mark, "Source Edp," utilizes a thinner, more rounded lettering and is often accompanied by the diamond-shaped logo.

Although plaintiff's case concerning the similarity of the marks at issue is strong, it is not so strong as to eliminate the issue of similarity entirely as an issue in this case. The Court therefore finds that a material issue of fact concerning the similarity of the marks continues to exist.

**5.** Even if the "Employment Opportunities" data base is purely the creation of another corporation, this conclusion remains valid. In that

### 2. The Similarity of the Services

▪ It is not necessary that plaintiff establish that the user of an allegedly infringing service mark actually competes with the plaintiff in order to establish liability. *Helene Curtis*, 560 F.2d at 1331. Rather, the services need be similar only to the extent that the services " 'are the kind the public attributes to a single source.' " *McGraw-Edison*, at 1169, quoting *E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir.1985), *reh'g denied*, 765 F.2d 154 (11th Cir.1985). " '[T]he rights of an owner of a registered trademark ... extend to any [services] related in the minds of consumers in the sense that a single producer is likely to put out both [services].' " *Id.*, quoting *Remy Martin*, 756 F.2d at 1530. *See also, Helene Curtis*, 560 F.2d at 1331. "A mark that is strong because of its fame or uniqueness, is more likely to be remembered and more likely to be associated in the public mind with a greater breadth of products and services...." *Beefeater I*, 540 F.2d at 276.

▪ Plaintiff asserts that plaintiff and defendant are competitors in the personnel services market; defendant vigorously denies that claim. Plaintiff's business is to place individuals with clients that are looking for employees; in the vernacular, plaintiff is a "headhunter." Defendant, on the other hand, is in the business of facilitating access to information. The service it offers its clients is efficient access to a wide variety of information. One area of information that defendant makes available to its clients is, in the words of defendant's own directory of services on "The Source," "Employment Opportunities." *See,* Grune deposition, Exhibit 9, p. 25. As defendant's Chief Executive Officer admitted, this data base allows individuals in companies that are interested in locating new employees to do so through "The Source." *See,* Grune deposition at 113–14.[5]

event, the proof would simply indicate that two corporations, each with capabilities needed to complement the capacities of the other, com-

However, it is true that defendant's *business* is not personnel services; defendant's business is the facilitation of efficient information delivery. Moreover, to a large extent, companies can be said to compete with one another only if the consumers of their products or services perceive the companies as producing products or services that are interchangeable. Thus, plaintiff is correct in noting that, in a sense, it is similar to a library, and that, in all likelihood, few people would consider a library to be in competition with the plaintiff even if the library contained information concerning employment opportunities in the field of data processing. The importance of this point is underscored by the fact that plaintiff's evidence does not, thus far, suggest that any potential applicant or client of plaintiff has foregone plaintiff's services because of the availability of the employment opportunities data base on "The Source." Thus the Court finds that the degree to which the parties can be said to be in competition remains a disputed fact.

Even granting this distinction, however, there is deposition testimony from two non-party witnesses that suggests that individuals in the computer and data processing area do not find it anomalous that a single company could provide both personnel placement services for computer and data processing professionals and a service facilitating computer access to a multiplicity of information data bases. Michael Volpe, after seeing one of plaintiff's ads, phoned plaintiff's New York office and was transferred to the Los Angeles office. Volpe was familiar with "Source Edp" as a headhunting firm in the computer industry. He sought both information on salaries and salary trends in the computer industry and information concerning accessing data bases for general and business news. It was his understanding that the company he called provided both services. *See,* Volpe deposition at 9–12. Similarly, Robert Arbogast, Jr. testified that he contacted plaintiff's Phoenix office in search of both employment services and information concerning data base access. *See,* Arbogast deposition at 8.

Thus, there is record evidence that individuals in the relevant market find nothing anomalous in a company offering both services at issue here. However, the Court again concludes that the record concerning the public's perception of the similarity between the parties' services is not sufficiently developed to justify a finding that the plaintiff has carried its burden of proving that no genuine issue of fact exists.

### 3. The Area and Manner of Concurrent Use

The Court finds there is no genuine dispute concerning the fact of use by the respective parties of the service marks "Source Edp" and "The Source" within the computer industry. Plaintiff contends, and defendant has not disputed, that both companies advertise within trade magazines dealing with computers and data processing. *See,* Vogeler deposition at 76, Parr affidavit at ¶ 6. Moreover, one of plaintiff's employees, Karl Vogeler, testified at his deposition that both companies attended the Southwest Computer Show in Dallas and that their booths were one hundred to one hundred and fifty feet apart. Both firms used "source" service marks at the show. This testimony has not been contradicted by defendant.

### 4. The Degree of Care Likely to Be Exercised by Consumers

■ Although plaintiff identifies the purchasers of the products or services at issue as a factor to be considered in assessing the likelihood of confusion, *see* brief at 14, plaintiff failed to address this factor, or the more specific formulation of it noted herein, within plaintiff's opening brief.

Defendant claims, and plaintiff has not denied, that subscribers to "The Source" must pay a $100.00 initiation fee and an

bined to utilize their respective resources to provide potential clients of the plaintiff with an

alternative method of finding new employees.

hourly user fee for any time during which they are on-line. Thus, use of "The Source" represents a not insubstantial investment, especially initially, by the defendant's customers. Similarly, use of plaintiff's service represents a substantial investment by plaintiff's clients. Myron Parr, plaintiff's President and Chief Operating Officer, testified that plaintiff's clients are charged "anywhere from 10 to 30 percent of starting compensation." Parr deposition at 8.

The Seventh Circuit has recently noted that

> in general, where "the cost of the defendant's trademarked product is high, the courts assume that purchasers are likely to be more discriminating than they might otherwise be." J. Gilson, Trademark Protection and Practice § 5.08 (1985). *See also E-Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604 (9th Cir. 1983) (nuclear instruments); *Astra Pharmaceutical Prods., Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201 (1st Cir. 1983) (blood analyzer machines); *Pignons S.A. v. Polaroid Corp.,* 657 F.2d 482 (1st Cir.1981) (cameras); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 627 F.2d 628 (2d Cir.1980) (clothing).

*Maxim's Limited v. Badonsky,* 772 F.2d 388, 393 (7th Cir.1985). *See also, Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1160 (5th Cir.1982).[6]

Plaintiff points to alleged instances of actual confusion on the part of potential and actual customers of both firms to suggest that the alleged sophistication of the parties' customers will not prevent confusion. Although evidence of actual confusion is clearly relevant to the question of likelihood of confusion, it does not obviate the material issue of fact presented by defendant's evidence that the cost of the parties' services and relative sophistication of their customers does not support a finding of likelihood of confusion. The Court therefore finds the record evidence concerning the degree of care likely to be exercised by consumers does not support a grant of summary judgment.

5. The Strength of Plaintiff's Marks

As noted in the introductory factual section of this opinion, plaintiff's "Source Edp" and "Source Edp" plus logo service marks have obtained incontestable status.[7] Plaintiff argues, with a citation to *Union Carbide,* 531 F.2d at 377, that "[i]ncontestable marks, such as plaintiff's, are conclusively presumed to be strong, since they are presumed to have acquired secondary meaning." Plaintiff's brief at 16. For the reasons outlined below, this Court disagrees, and finds that the strength of plaintiff's marks is a material disputed issue of fact in this action.

In *Union Carbide,* the Seventh Circuit held that

> a plaintiff in an infringement action establishes conclusively, under § 1115(b), his exclusive right to use a trademark to the extent he shows his trademark has become incontestable under § 1065. Incontestability does not broaden a trademark in the sense that it allows a registrant to claim rights over a greater range of products than he would otherwise be entitled to claim; but once incontestability is established, registrant's mark is immune from challenge on any grounds not enumerated in § 1115(b).

531 F.2d at 377. Quoting from J. McCarthy, Trademarks and Unfair Competition

---

6. The *Maxim's* court went on to note that "(w)here marks are identical, of course, sophistication as a factor in determining likelihood of confusion is less significant." 772 F.2d at 393. As noted *supra,* at 607, plaintiff's and defendant's marks are not identical.

7. Plaintiff claims that its "Source Finance" service mark has also achieved incontestable status; defendant contests this claim. However, since defendant does not dispute the incontestability of the "Source Edp" service marks and there does not appear from the record to be any claim that there is a use of defendant's "The Source" service mark that would create a likelihood of confusion with plaintiff's "Source Finance" mark but not with the "Source Edp" marks, this issue is immaterial to the present motion.

§ 11:17 (1973), the Seventh Circuit reiterated its holding by noting that if a mark has become incontestable

"then lack of distinctiveness of such a mark cannot be raised in litigation. That is, it is conclusively presumed either that the mark is non-descriptive, or if so, has acquired secondary meaning. Defendant faced with an incontestable registered mark cannot defend by claiming that the mark is invalid because it is descriptive."

*Id.* This holding was effectively affirmed by the Supreme Court in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), in which the Court held "that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive." 105 S.Ct. at 667.

■ Applying this case law to the instant case, the following conclusions can be drawn: first, plaintiff has the exclusive right to use the marks "Source Edp" and "Source Edp" plus logo in the areas of commerce for which they were registered. Those marks are conclusively presumed to be non-descriptive (see discussion *infra*) or, if descriptive, to have acquired secondary meaning. Defendant in this action cannot defend the infringement claim brought against it by claiming that the "Source Edp" marks are invalid because they are descriptive.

■ These conclusive presumptions, however, do not prove the strength of plaintiff's incontestable marks. Even if this Court found that plaintiff's marks are descriptive, which it does not (*see*, text *infra* at 610), the conclusive presumption that the marks have secondary meaning established by the statutory incontestability of plaintiff's "Source Edp" marks does not automatically transfer into a conclusive presumption of strength in a likelihood of confusion analysis. As Professor McCarthy notes,

[f]inding a secondary meaning is not the end of the enquiry, but only the beginning. The real issue in cases of non-in-

herently distinctive marks is whether the senior user's mark has enough strength to prevent this particular defendant's use. In this sense, "secondary meaning" is merely a label given to that quantum of "strength" sufficient to activate some terms into life as a trademark.

1 McCarthy, Trademarks and Unfair Competition § 11:25 (2d ed. 1984).

Any assessment of a mark's strength requires further analysis, and that analysis, as the *McGraw-Edison* court noted, must begin with a determination of which category (or categories) of trademarks plaintiff's trademarks belong to:

"Trademarks may be placed into four categories according to strength and the corresponding amount of protection which will be accorded them. Trademarks can be (1) descriptive or generic, i.e., the mark describes the product or service itself; (2) suggestive, i.e., the mark describes or suggests a characteristic of the product or service; (3) arbitrary, i.e., the mark is a word in common use, but applied to a product or service unrelated to its meaning, so that the word neither describes nor suggests the product or service; and (4) coined, i.e., the mark is a word devised or invented for the purpose of identifying the product."

*McGraw-Edison*, at 1170–71, quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 611 n. 2 (7th Cir.1965).

Many courts and commentators have noted the difficulty of drawing a line between descriptive and suggestive marks. *See, e.g., Union Carbide*, 531 F.2d at 379, 1 McCarthy, Trademarks and Unfair Competition § 11.21 (2d ed. 1984). However, in *Union Carbide* the court stated that perhaps the best statement of the distinction is the following:

"Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive."

521 F.2d at 379, quoting A. Seidel, S. Dalroff, and E. Gonda, Trademark Law and Practice § 4.06 at 77 (1963).

 Applying this test, the Court finds that all of the marks at issue in this action are suggestive. "Source Edp," even assuming that the public assumed that Edp referred to data processing, only imparts the idea that the company represented is the source of something to do with data processing. That something could be data processing services themselves, or, as in this case, data processing personnel services, or many other possibilities. The mark clearly "requires some operation of the imagination" to connect it with plaintiff's services. A similar analysis holds true for the mark "Source Finance." Defendant's mark, "The Source," requires even greater imagination, since it imparts only that defendant is a source of something, but gives no clue as to what that something might be.

This analysis of plaintiff's marks is implicitly supported by the record of plaintiff's registration of its "Source Edp" and "Source Finance" marks. Both marks were originally challenged by the United States Patent and Trademark Office, but on grounds of likelihood of confusion with existing registered marks, not because the Office found the marks to be descriptive. Plaintiff subsequently modified the recitation of services on its applications and the marks were registered. *See,* Parr deposition exhibits 10, 11. As the court in *Union Carbide* noted, the Patent and Trademark Office's implicit determination that plaintiff's marks are not descriptive should be accorded some deference by the district court. 531 F.2d at 378.

 Although, as a general matter, it is true that arbitrary or coined marks are presumed to have greater strength than descriptive or suggestive marks, simply labeling a mark under one of these categories is not dispositive of its strength. *See, Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Ass'n,* 651 F.2d 311, 315 (5th Cir.1981), *reh'g denied,* 659 F.2d 1079 (5th Cir.1981) (The use of the word

"sun," although arbitrary when used to identify financial institutions, results in a weak mark because of extensive use in other marks.) As the Second Circuit has noted, "while these categories can be useful for analytical purposes, the strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the public." *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). That strength " 'may derive from the intrinsic quality of a mark or from its public history:' " *Id.* at 1132, quoting *McGregor-Doniger Inc. v. Drizzle Inc.,* 446 F.Supp. 160, 162 (S.D.N.Y.1978). *See also,* 1 McCarthy, Trademarks and Unfair Competition § 11:25 (2d ed. 1984) ("[T]he true relative strength of a mark can only fully be determined by weighing two factors: (1) the placement of the mark on the spectrum of marks; and (2) the marketplace recognition value of the mark.")

 Defendant argues that the word "source" has been used extensively in trade and service marks both inside and outside the computer industry and has submitted to the Court evidence concerning other registrations and pending applications for registration of trade and service marks using the word "source." Such evidence is relevant to a determination of the strength of plaintiff's marks, but "only to the extent that the similar marks are promoted by their owners or recognized by the consuming public." *McGraw-Edison,* at 1171. Plaintiff notes that information concerning the use of these marks and their degree of recognition by the public has not been provided by the defendant. However, the Court notes a similar failure by the plaintiff—the record is simply bare as to the use of and recognition accorded these competing trademarks. As this is plaintiff's motion for summary judgment, it is plaintiff's burden to establish what effect, if any, the competing marks have had on the strength of plaintiff's marks. Plaintiff has failed to do so, and the Court must therefore conclude that a genuine issue concerning the strength of plaintiff's

marks exists. *Cf., McGraw-Edison,* at 1171–72.

### 6. Actual Confusion

■ Although evidence of actual confusion is not necessary to sustain a finding of likelihood of confusion, "such evidence, if available, is entitled to substantial weight." *Helene Curtis,* 560 F.2d at 1330. *See also, McGraw-Edison,* at 1172–73. However, "isolated instances of actual confusion or misdirected mail have been held insufficient to sustain a finding of likelihood of confusion." *Union Carbide,* 531 F.2d at 383. "Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight [citation omitted], while confusion of actual customers of a business is worthy of substantial weight." *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1167 (11th Cir.1982). Moreover, "[t]he value of evidence of actual confusion is greater when the products involved are low value items because purchasers are unlikely to complain when dissatisfied, which would bring to light confusion...." *Union Carbide,* 531 F.2d at 383.

Plaintiff has proffered substantial evidence of actual confusion. Attached as exhibits 2 through 15 to Plaintiff's Reply Brief are affidavits of employees of the plaintiff from several of its offices throughout the country. Each of the affidavits states that the employee received at least one, and often several, phone calls from members of the public who had called the plaintiff in the belief that plaintiff offered defendant's data base service, "The Source." Defendant assails those affidavits as inadmissible and incredible.

■ The Court finds the affidavits to be admissible. To the extent that the reported statements of the members of the public identified therein can be considered hearsay,[8] the statements are admissible under Fed.R.Evid. 803(3) as a statement of the declarant's then existing state of mind, *i.e.,* the declarant's confusion as to the source of "The Source." *See, Mile High Upholstery Fabric Co., Inc. v. The General Tire & Rubber Co., Inc.,* 221 U.S.P.Q. (BNA) 217, 223 (N.D.Ill.1983), *Programmed Tax Systems, Inc. v. Raytheon Co.,* 439 F.Supp. 1128, 1131 n. 1 (S.D.N.Y. 1977), *Markel v. Scovill Manufacturing Co.,* 471 F.Supp. 1244, 1251 (W.D.N.Y. 1979), *aff'd,* 610 F.2d 807 (2d Cir.1979). *Cf., Piper Aircraft,* 741 F.2d at 931 (survey evidence concerning public's belief as to origin of a product admissible pursuant to Fed.R.Evid. 803(3)); *Scandia Down,* 772 F.2d at 1431 (testimony at trial by plaintiff's employees concerning confusion of the public), *Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1160 n. 10 (5th Cir.1982) (testimony by plaintiff's employees concerning confusion of the public admissible pursuant to Fed.R.Evid. 803(3)).[9]

■ Defendant asserts these affidavits are incredible because they originate with plaintiff's employees, because they often lack specificity as to the details of the alleged conversations, and because their similar format suggests that they were prepared by a single source. The Court

---

**8.** At least two courts have found similar statements not to have been hearsay on the ground that the statements were not offered to prove the truth of the matter asserted. *See, Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1160 n. 10 (5th Cir.1982); *Mile High Upholstery Fabric Co., Inc. v. The General Tire & Rubber Co., Inc.,* 221 U.S.P.Q. (BNA) 217, 223 (N.D.Ill.1983).

**9.** Defendant has moved to strike other proffered evidence of confusion found in Exhibits C and D to the affidavit of Myron Parr in support of plaintiff's initial brief. The proffered evidence consists of unsworn reports, prepared by plaintiff's employees and forwarded to plaintiff's executives, of instances of inquiries from members of the public searching for defendant's service "The Source." Plaintiff's President, Myron Parr, testified at his deposition that the reports were gathered after discussion with plaintiff's counsel and that similar records were not kept prior to that discussion. Parr deposition at 53. *See also,* Parr deposition exhibits 6 and 7 (letters from Parr to field personnel requesting these reports). The Court agrees with defendant that these reports are hearsay and cannot be admitted as evidence under the business records exception (Fed.R.Evid. 803(6)) or any other recognized exception to the hearsay rule.

agrees that these arguments have some validity, but notes that, in each case, the criticism goes to the weight to be accorded the evidence, not its admissibility. *Cf., Blue Ribbon Feed Co. Inc. v. Farmers Union Central Exchange, Inc.*, 731 F.2d 415, 419–20 (7th Cir.1984) (Fact that affidavits in support of summary judgment motion were similar in format was not sufficient in itself to convince the court that "affiants signed their names to pre-prepared and manifestly false affidavits."); *Mile High Upholstery*, 221 U.S.P.Q. (BNA) at 223.

Plaintiff has also taken the depositions of several confusion witnesses. *See, e.g.,* Settelen, Volpe and Arbogast depositions, discussed *supra* at 606, 607 and 608. *See also,* Daneman, Damico, Foulkes, Heuser, Kirwin, Kravitz, Markoff, Mitchell, and Wise depositions. These depositions again indicate that members of the public have contacted the plaintiff in the belief that the plaintiff is the source of "The Source," and serve to enhance the credibility of the affidavits noted above.

Plaintiff has also introduced evidence that checks in payment of defendant's invoices have been erroneously sent to plaintiff. *See,* affidavits of Gary Weiss and attached exhibits, filed October 21 and October 26, 1983. Moreover, according to Mr. Weiss' October 26 affidavit, two of the companies involved, Boeing Computer Services Company and Manufacturers Hanover Trust Company, are also clients of the plaintiff. This evidence would suggest companies doing business with both parties are, at least on occasion, confused as to the parties' discreet identities.[10]

Finally, plaintiffs have proffered the Datamation Magazine 1983 Brand Preference Study, published by Technical Publishing, a subsidiary of the Dun & Bradstreet Corporation, as further evidence of confusion within the field of data processing. The Study presents a tabulation of end user (*i.e.,* consumer) market preferences. In the area of Network Information Services, the Study listed "Source Edp" as the fifth most-mentioned company. Plaintiff contends, and defendant agrees, that defendant was the company actually intended by the survey respondents.

The probative value of this evidence is undermined, however, by exhibit 3 from the deposition of Laurie Schnepf, which indicates that the actual responses from the survey respondents were either "Source" or "The Source," not "Source Edp." The Dun & Bradstreet personnel interpreting the raw data, unfamiliar with defendant's company, interpreted the "Source" responses as references to "Source Edp." Thus, the study is inconclusive as to which corporate parent the survey respondents actually identified with "The Source." On the other hand, it is clear that employees of a trade magazine for the data processing industry assumed the responses referred to "Source Edp."

Defendant, apparently on the assumption that plaintiff's confusion evidence falls within the area of "reverse confusion," argues that the evidence cannot support a finding of liability under the Lanham Act. In support of that argument, defendant cites *Westward Coach Manufacturing Co. v. Ford Motor Co.*, 388 F.2d 627, 633–34 (7th Cir.1968), *cert. denied,* 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968), in which the Seventh Circuit, applying Indiana law, held that "reverse confusion" would not support a cause of action under Indiana statutory or common law. In recent years, however, federal courts interpreting the Lanham Act have followed the lead of the Tenth Circuit in *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir.1977), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978), in supporting actions based upon "reverse confusion." *See,* 2 McCarthy, Trademarks and Unfair Competition § 23:1(E) (2d ed. 1984).

---

**10.** The Court finds unpersuasive defendant's attempt to impeach the authenticity of the Manufacturer's Hanover check.

In this case, however, reverse confusion has not appeared from the evidence presented. In defining reverse confusion, Professor McCarthy has noted the following:

> The traditional pattern of classic "forward confusion" is when customers mistakenly think that the junior user's goods or services are from the same source as or are connected with the senior user's goods or services. Customers want to buy the senior user's product and because of the similarity of marks, mistakenly buy the junior user's product instead. In "reverse confusion", customers purchase the senior user's goods under the mistaken impression that they are getting the goods of the junior user. That is, reverse confusion occurs when the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user: the reverse of traditional confusion.

*Id.* Thus far, the confusion uncovered by the plaintiff involves the association of the junior user's services (defendant's service "The Source") with the senior user's prexisting service (plaintiff's personnel services marketed under "Source Edp"). Thus, reverse confusion does not appear to be an issue in this action.

However, defendant accurately notes that plaintiff's confusion evidence does not suggest that any potential applicant or client of the plaintiff has been confused into using defendant's service rather than the plaintiff's. All of the instances of confusion reviewed by this Court involve a mistaken association of the defendant's information service, "The Source," with plaintiff's service mark, "Source Edp." In other words, as in *Telmed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 220 (7th Cir.1978), there is "no evidence that any person or corporation ever mistakenly purchased defendant's program while intending to purchase plaintiff's service." This serves to underline the importance of the question of the degree of actual competition that can be ascribed to the parties and the strength which can be ascribed to plaintiff's "Source" service marks. *Cf., Telemed*, 588 F.2d at 219–220. Additionally, it would be helpful to place the number of incidents of confusion in context through some indication of the number of telephone and other contacts the parties receive in total. The large number of offices maintained nationally by the plaintiff would suggest that that number would necessarily be substantial. *Cf., Mile High Upholstery*, 221 U.S. P.Q. (BNA) at 223, *Telemed*, 588 F.2d at 220.

■ In summary, the Court finds that there is no genuine dispute concerning the association, by a considerable number of individuals, of defendant's service "The Source" with plaintiff's service mark "Source Edp." However, the weight to be accorded that evidence remains an open issue to be evaluated in light of the evidence concerning the degree of competition between the parties, the strength of plaintiff's marks, the circumstances surrounding the confusion, and the universe of contacts within which these incidents of confusion arose.

7. The Intent on the Part of the Alleged Infringer

■ Plaintiff alleges wrongful intent on the part of defendant by virtue of defendant's admission that it knew of plaintiff's marks in 1980, yet chose to use its mark "The Source" anyway. Defendant also admits that, even after plaintiff demanded cessation of the alleged infringement, defendant refused to do so. However, mere knowledge on the part of defendant of plaintiff's marks and defendant's refusal to relinquish its mark upon demand are not clearly indicative of bad faith; those actions could also be explained by a good faith judgment on the part of defendant that its new mark did not infringe upon plaintiff's marks.

■ The issue is not simply whether defendant knew of the plaintiff's marks; the issue is whether defendant adopted its

mark in an effort to trade off of the good will and business of the plaintiff. *See, McGraw-Edison,* at 1167–66 quoting *Helene Curtis,* 560 F.2d at 1330. Defendant has specifically denied this. *See,* Defendant's Memorandum in Opposition, Exhibit C, affidavit of Bettie Steiger. Moreover, as the *McGraw-Edison* court noted, " 'Subjective issues such as good faith are singularly inappropriate for determination on summary judgment.' " At 1173, quoting *American International Group, Inc. v. London American International Corporation, Ltd.,* 664 F.2d 348, 353 (2d Cir. 1981). This Court concludes that defendant's intent in adopting the service mark "The Source" is a disputed issue of fact.

Conclusion

It is clear that most of the issues that this Court must consider in determining the likelihood of confusion remain disputed. Moreover, the weight that should be accorded each factor in determining the likelihood of confusion, an issue of fact in itself, is also in dispute. Plaintiff stresses the evidence of actual confusion; defendant stresses the alleged weakness of plaintiff's service marks. Given this record, summary judgment upon the issue of likelihood of confusion is not appropriate. Therefore, plaintiff's motion for summary judgment on its Lanham Act claims is hereby denied.

C. THE STATE LAW CLAIMS

Plaintiff also has moved for summary judgment on its state law claims under the Illinois Deceptive Trade Practices Act, the common law of unfair competition, and the Anti-Dilution Act.

Under the Illinois Deceptive Trade Practices Act a defendant is liable only if the plaintiff can establish a likelihood of confusion between the parties' products. *Hooker v. Columbia Pictures Industries, Inc.,* 551 F.Supp. 1060, 1064 (N.D. Ill.1982). " 'Likelihood of confusion' has the same meaning in unfair competition cases under the Deceptive Trade Practices Act as it has in traditional infringement cases." *Id.*

*McGraw-Edison,* at 1173–74. As this Court has found a material issue of fact exists concerning the likelihood of confusion, summary judgment on the Deceptive Trade Practices Act claim is inappropriate. Similarly, since the Act "is merely a codification of the Illinois common law of unfair competition," *id.* at 1173–74 n. 9, summary judgment on plaintiff's common law claim is unwarranted.

Under the Anti-Dilution Act, the court must consider "the distinctiveness of the mark and whether the mark is being diluted." *Hyatt Corporation v. Legal Services,* 736 F.2d 1153, 1157 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 361 (1984); *McGraw-Edison,* at 1173–74. The Court has already noted in its analysis of the Lanham Act claims that the strength of plaintiff's marks is a disputed issue of fact. Therefore, summary judgment on the Anti-Dilution Act claim also is unwarranted.

III

Plaintiff's motion for summary judgment is denied. A status hearing in this action is scheduled for May 23, 1986.