AMERICAN INTERNATIONAL GROUP, INC., Plaintiff-Appellant,

v.

LONDON AMERICAN INTERNATIONAL CORPORATION LIMITED and Midland Bank Limited, Defendants-Appellees.

No. 23, Docket 81–7237.

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1981.

Decided Nov. 13, 1981.

David R. Hyde, New York City (Loretta A. Preska, Cahill Gordon & Reindel, Stephen B. Judlowe, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, on the brief) for plaintiff-appellant.

T. Barry Kingham, New York City (Jerome R. Bidinger, Robert E. Smith, Curtis, Mallet-Prevost, Colt & Mosle, New York City, on the brief), for defendants-appellees.

Before NEWMAN and KEARSE, Circuit Judges, and EGINTON,* District Judge.

KEARSE, Circuit Judge:

Plaintiff American International Group, Inc. ("AIG") appeals from a final judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge*, following the granting of summary judgment for defendants London American International Corporation Limited ("London American International" or "LAI") and Midland Bank Limited ("Midland") in AIG's action for infringement of its "American International" service mark. AIG complained that the defendants' use of "American International" in London American International's name violated the Lanham Trade Mark Act by infringing AIG's registered service mark in violation of 15 U.S.C. § 1114(1) (1976), and constituting a false designation of origin or false description of services in violation of 15 U.S.C. § 1125(a) (1976), and that such use diluted the distinctiveness of AIG's trade name in violation of New York General Business Law § 368–d (McKinney 1968).

---

* Honorable Warren W. Eginton, of the United States District Court for the District of Connecticut, sitting by designation.

Since we find that there were genuine issues as to material facts which were inappropriate for disposition on a motion for summary judgment, we reverse and remand.

## FACTS

As set forth in various affidavits, depositions, reports and other documents submitted to the district court, the facts appear to be as follows. AIG is a Delaware holding company whose principal business is insurance. Currently headquartered in New York's financial district, the company was founded in Shanghai shortly after World War I and has been using the name "American International" since 1926. It has grown to be the largest international insurance organization in the United States, and one of the largest in the world, operating through more than 150 subsidiaries and related companies in more than 130 countries. Many of these operating companies include "American International" in their corporate name, often in conjunction with a geographic modifier, e. g., American International de Mexico, S. A., American International Insurance Company of Ireland, Ltd., American International Insurance Company (Nigeria) Limited, and American International Underwriters (London) Ltd. Although AIG provides sophisticated insurance coverage for a wide range of risks to businesses around the world, the majority of its income is derived not from risk underwriting but from the investment of insurance premiums. The bulk of this investment is in tax-exempt bonds, but AIG also invests in stocks, real estate, time deposits, collateral loans, and other short term investments. In addition to its investments and insurance services, AIG provides various real estate, broker-dealer, pension fund administration, and installment loan services. It thus provides a variety of international financial services to corporations.

Midland is the third largest bank in the United Kingdom and the twenty-sixth largest bank in the world. With its subsidiaries, it provides a wide range of financial services, both domestically and internationally, including commercial and merchant banking, insurance, travel, personal and corporate financial advice, and international export finance and marketing services. Midland owns 75% of London American International, which is the only Midland subsidiary to use the words "American International" in its name.

London American International is a British holding company with operations in more than 100 countries, providing international marketing and distribution services through one group of subsidiaries, and financing for purchasers of raw materials and manufactured goods in international trade through another group. Although LAI apparently does not itself underwrite insurance, at least one LAI subsidiary arranges insurance for its customers in most of its transactions. None of LAI's subsidiaries uses the words "American International" in its name. They identify themselves, in general, as members of the London American Group.

London American International has used its current name only since 1978. Prior to 1966 the company was known as Eggar Forrester & Verner Limited. In 1966 the name was changed to B.O.E.C.C. (Holdings) Limited, and in 1971 to London American Finance Corporation Limited. In 1977 London American International acquired a new subsidiary, B.O.E.C.C. (Medium Term) Limited, and this new subsidiary's name was changed to London American International Corporation Limited to reflect its international trading capabilities. In 1978, as part of a corporate restructuring, the parent and subsidiary exchanged names, thus giving London American International its current name. Prior to LAI's adopting "American International" as part of its name, some of its employees were aware of AIG; but London American International did not search records of the United States Patent and Trademark Office to determine whether a competing mark might have been registered.

During 1978, defendants commenced public use of the new name that included "American International." Midland published a newspaper advertisement several times during the year in the *Economist* and

*Financial Times* which stressed the range of financial services Midland offered, and included a reference to London American International:

> *International Marketing · Services. Competitively.*
>
> A unique range of marketing and export finance services through the London American International Corporation Limited, operating in over 100 countries.
>
> Information on regulations, tariffs, documentation procedures and exchange control.

On June 30, 1978 the Asian edition of the *Wall Street Journal* published a short article on a new London American International office:

> *London American Finance Forms Office in Singapore*
>
> SINGAPORE (Reuter)—London American Finance Corp. [*i. e.*, the subsidiary with which London American International had exchanged names earlier in the year] said it established a regional representative office in Singapore.
>
> The company, the international trade finance division of London American International Group and a subsidiary of the Britain's [*sic*] Midland Bank, also will establish a representative office in Sydney.

The reference in this article to "London American International Group"—a designation that defendants insist *they* do not use—appears to have convinced AIG that there was a potential for confusion between London American International and itself on the basis of the similarity in their names.

In April 1979, having tried unsuccessfully for several months to persuade defendants to eliminate use of the phrase "American International" in LAI's name, AIG filed this Lanham Act action. Following a year of discovery, defendants moved for summary judgment. Their detailed statement, pursuant to Rule 9(g) of the Local Rules of the court, of the material facts as to which they contended there was no genuine dispute included the specifics as to their and AIG's businesses and names, and concluded that "[t]here is no likelihood of confusion between London American's name and businesses and the name and businesses of AIG." AIG opposed the motion, presenting a very brief affidavit and excerpts from several depositions of its own and defendants' executives, and relying on documents attached to its complaint, and other court papers. AIG also submitted a brief statement of material facts "upon which there is apparent dispute between the parties." This statement did not dispute the detailed statements of fact put forth in defendants' moving Rule 9(g) statement; it did however state that the services provided by AIG "and by defendants under the trade style LONDON AMERICAN INTERNATIONAL are both overlapping and complementary to a very substantial extent," and it stated that there was a likelihood of confusion as to the origin of the services provided by AIG and the defendants.

The district court granted the motion for summary judgment, stating that "it is obvious that there is no possibility of confusion," that AIG had "failed to demonstrate either that American International is an inherently strong trade name susceptible to dilution or that it has acquired a secondary meaning," and that "it is evident that defendant LAI chose its trade name in good faith." [1]

## DISCUSSION

The standards for summary judgment under Rule 56(c) of the Federal Rules of

---

1. After stating that the motion had been made and was opposed, the court's order was as follows:

> First, it is obvious that there is no possibility of confusion. There is no real identity between the parties' service marks and the business activities performed by the two parties are very different. Plaintiff's business lies in the areas of insurance and insurance-related services. Defendant London American International Corporation Limited (LAI)

is a holding company which itself does not carry on a trade or business of its own. LAI's subsidiaries provide international trade finance, export marketing and import distribution services. None of these subsidiaries have the words "American International" in their corporate names nor are engaged in businesses like those conducted by plaintiff and its subsidiaries.

> Second, plaintiff has not proved that its trade name merits protection under the New

3

51

Civil Procedure are well established. It is a remedy reserved for cases in which the Rule's requirements are clearly satisfied. The burden is on the moving party "to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). The courts should resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the party opposing summary judgment "generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir. 1980).

Although we have recently recognized the appropriate use of summary judgment in "putting a swift end to meritless litigation," *Quinn, supra*, 613 F.2d at 445; *Markowitz v. Republic National Bank*, 651 F.2d 825, 828 (2d Cir. 1981), it remains true that summary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial. *Quinn, supra; Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975); *FLLI Moretti Cereali v. Continental Grain Co.*, 563 F.2d 563, 565 (2d Cir. 1977); *Heyman, supra*. As we explained in *Jaroslawicz, supra*, "the responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits." 528 F.2d at 731.

Instead of applying these principles in the present case, the district court appears to have decided issues of fact, to have placed the burden on AIG of proving, in opposition to the motion, the merits of its case, and to have ignored relevant disputed issues.

In deciding the merits of a Lanham Act claim such as that asserted here by AIG, the court must determine whether the defendant's use of the plaintiff's mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Whether or not there is a likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties. A variety of factors may be material in assessing the likelihood of confusion. We listed eight such factors in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961),[2] the most pertinent of which, for our purposes here, are (1) the strength of the plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products or services, and (4) the defendants' good faith in adopting its mark. Viewing the evidence as to these factors in the light most favorable to AIG, we conclude that there were genuine questions of fact, making summary judgment inappropriate.[3]

First, as to the strength of AIG's service mark, the district court, in the context of AIG's state-based antidilution claim, concluded that "[AIG] has failed to demonstrate either that American International is an inherently strong trade name susceptible

York anti-dilution statute, Gen.Bus.Code § 368–d. Plaintiff has failed to demonstrate either that American International is an inherently strong trade name susceptible to dilution or that it has acquired a secondary meaning. *Allied Maintenance v. Allied Mechanical*, 42 N.Y.[2d] 538, 399 N.Y.S.2d 628, 632 [369 N.E.2d 1162] (1957).

Finally, it is evident that defendant LAI chose its trade name in good faith and has not made an effort to expand or even contemplated expansion into the insurance business field. *See Information Clearing House v. Find Magazine*, 492 F.Supp. 147 (S.D.N.Y. 1980).

Accordingly, defendants' motion for summary judgment is granted.

2. We have recognized that these factors apply both when the parties' products are different, as in *Polaroid*, and when they are substantially similar, as in *Vitarroz v. Borden, Inc.*, 644 F.2d 960, 965–67 (2d Cir. 1981).

3. We decline AIG's invitation to enter summary judgment in its favor. Although we have the power to grant such relief here despite AIG's failure to move formally in the district court for summary judgment in its favor, *see Abrams v. Occidental Petroleum Corp.*, 450 F.2d 157, 165 (2d Cir. 1971), *aff'd*, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), we do not find

to dilution or that it has acquired a secondary meaning." In the summary judgment context the drawing of such a conclusion is inappropriate. There was no burden on AIG to prove the merits of its claim at that time; it needed only to establish the existence of a material factual question. Viewing the presentation made by AIG in the light most favorable to it, we conclude that a factual issue was raised. AIG's evidence tends to show that it has used the "American International" name for over fifty years in all levels of its business. It has featured the name in extensive advertising in a wide variety of publications, including two in which Midland advertised London American International. It has been the subject of favorable media coverage. *See* Robertson, *Nobody Tops A.I.G. in Intricacy—or Daring,* Fortune, May 22, 1978, at 90. It uses the name for subsidiaries in all areas of its business, from American International Reinsurance Co., to American International Marine Agency of New York, Inc., to American International Data Center Limited. It has been consistently successful in marketing its services under the name. And finally, it has vigorously sought by both litigation and conciliation to protect the "American International" name from infringement in financial fields.[4]

As to the degree of similarity between the marks, the district court simply concluded that, "[t]here is no real identity between the parties' service marks." Obviously the marks are not coterminous; but there are questions as to the degree to which they are similar. Indisputably London American International uses AIG's registered service mark, "American International," as a part of its name. It uses the mark with a geographic modifier, but AIG does the same with scores of its subsidiaries, including one, American International Underwriters (London) Ltd., which uses the same geographic

modifier. London American International also adds "Corporation" and "Limited" to its name, but AIG too uses business firm designations in connection with "American International" for its subsidiaries, *e. g.,* American International Underwriters Corporation, American International de Mexico, S.A., and American International Underwriters (London) Ltd. Further, notwithstanding defendants' own efforts to avoid referring to London American International and its affiliates as "London American International Group," *The Wall Street Journal* has referred to London American International in exactly that way. Viewing all the evidence in the light most favorable to AIG, it appears that there is a high degree of similarity between the two marks and that there is at the very least a potential for confusion.

As to the proximity of the services provided by the parties, the district court stated conclusively that

> the business activities performed by the two parties are very different. Plaintiff's business lies in the areas of insurance and insurance-related services.... LAI's subsidiaries provide international trade finance, export marketing and import distribution services. None of these subsidiaries ... are engaged in businesses like those conducted by plaintiff and its subsidiaries.

In reaching this conclusion, the district court appears to have resolved the factual question, and in so doing it exceeded its authority on a motion for summary judgment. Further, viewing the evidence in the light most favorable to AIG, the business activities of the two groups in providing sophisticated international financial services to multinational corporations, may well be complementary. For example, at least one London American International subsidiary arranges insurance for its customers;

---

such action appropriate in this case. Construing the factual presentations in the light most favorable to the defendants, as we would be required to do on a summary judgment motion by AIG, we conclude that the present record reflects genuine issues as to the facts of business similarity and likelihood of confusion.

4. *See, e. g., American International Group, Inc. v. High Yield Securities, Inc.,* No. 77–C–6322 (S.D.N.Y. May 8, 1978) (consent judgment and order) ("American International Management Investment Company" challenged); *American International Group, Inc. v. American International Investment Corp.,* No. 79–C–3233 (S.D. N.Y. Oct. 22, 1979) (default judgment).

and AIG is one of the largest insurance companies in the world. If the services of the two firms are complementary there may well be, in all the circumstances of this case, a likelihood of confusion. *See Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1252–53 (4th Cir.) ("Comcet's computers can be used to receive data transmitted by Comsat's satellites. Moreover, Comcet seeks to sell its computers to many of the same companies that Comsat solicits."), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970); *Aunt Jemima Mills Co. v. Rigney & Co.*, 247 F. 407 (2d Cir. 1917) (pancake flour and syrup complementary), *cert. denied*, 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540 (1918).

Finally, as to the defendants' good faith in adopting the "American International" name, the court again decided the factual issue, stating that "it is evident that defendant LAI chose its trade name in good faith." Subjective issues such as good faith are singularly inappropriate for determination on summary judgment, *see S.E.C. v. Frank*, 388 F.2d 486, 492 (2d Cir. 1968), and AIG adequately placed defendants' bona fides in question, as it presented evidence that at least some London American International employees were aware of AIG before LAI decided to use "American International" in its name, and that when London American International made that decision it did not check the records of the United States Patent and Trademark Office, where AIG has registered its "American International" service mark. London American International argues that it would be unreasonable to require a search of the trade name register in every country in which its subsidiaries conduct business. This may be so, but it hardly seems onerous to conduct a search of the United States register when "American" is part of the name and the company seeks to emphasize its United States business. Its failure to do so may reflect on its good faith, and any ambiguity should have been resolved against defendants on their motion for summary judgment.

In sum, there were a number of material facts as to which AIG properly asserted that there were genuine issues to be tried.

Those issues should not have been decided on summary judgment.

### CONCLUSION

The judgment of the district court is reversed, and the case is remanded for trial.