John D. Di PASQUALE, Plaintiff,

v.

**BOARD OF EDUCATION, WILLIAMS-
VILLE CENTRAL SCHOOL
DISTRICT, Defendant.**

No. CIV–82–677E.

United States District Court,
W.D. New York.

May 8, 1985.

Richard J. Rosche, Buffalo, N.Y., for plaintiff.

Craig L. Miller, Buffalo, N.Y., for defendant.

---

**MEMORANDUM and ORDER**

ELFVIN, District Judge.

In this action brought pursuant to 42 U.S.C. § 1983 alleging a violation of plaintiff's free exercise of religion rights under the First Amendment, the parties have stipulated the controlling facts and have moved for summary judgment.[1]

Plaintiff is a school teacher who has been employed by defendant for the last nine years. The terms and conditions of his employment in all regards and at all times pertinent to this case were governed by a collective bargaining agreement ("the cba") between the Williamsville Teaching Association and defendant. Plaintiff is a practicing Roman Catholic. The Roman Catholic Church recognizes certain "Days of Obligation" on which practitioners of the faith are expected to attend Mass. These days include the "Feast of the Immaculate Conception" in December and the "Feast of the Ascension" in May. The Church does not require that adherents refrain from work on such days; rather Masses are generally provided outside of working hours. (Such is true of the various parishes of the Diocese of Buffalo.) Plaintiff asserts, however, that his personal beliefs as a Catholic prevent him from working on either of these days. In effect, the central issue in this case concerns the extent to which defendant is compelled, as a matter of law, to accommodate this personal religious view of the plaintiff.

On December 7, 1981 plaintiff requested a paid leave of absence under section 5.14 of the cba in order to observe the Feast of the Immaculate Conception on December 8, 1981. Section 5.14 permits an employee six days leave ("family days") during a school year for sickness or death in the immediate family and certain religious holidays. Defendant denied plaintiff's request as inappropriate under section 5.14 on the grounds that it was possible for plaintiff to attend Mass during non-working hours. Defendant granted plaintiff's subsequent request

---

1. While I have decided to grant summary judgment here, such result is not mandated by the circumstances that the parties have stipulated to the facts and that both have moved for summary judgment. *See Schwabenbauer v. Board of Ed., Etc.,* 667 F.2d 305 (2d Cir.1981).

for paid leave December 8 as a "personal day" under section 5.15 of the cba and plaintiff accordingly was absent from school on that date. He thereafter initiated a grievance under the cba but later abandoned it.

On May 14, 1982 he similarly requested paid leave under section 5.14 to observe the Feast of Ascension on May 20, 1982. His request again was denied but he was again granted a personal day under section 5.15 and was absent from work May 20th. He grieved anew and a hearing was held before an arbitrator September 22, 1982. In a decision dated October 22, 1982, the arbitrator held that the term "religious holidays" under section 5.14 of the cba encompassed only those days where an employee's religion required absence from work. The arbitrator further held that the determination as to when a religion so required was intended under the cba to be objective, that plaintiff's views regarding the days at issue were subjective and not mandated by Catholic orthodoxy and, accordingly, that defendant's failure to grant plaintiff's requests did not violate the cba.

Plaintiff in his Amended Complaint contends that defendant's actions violated the free exercise and the establishment clauses of the First Amendment. He further asserts that his equal protection rights under the Fourteenth Amendment have been violated because defendant permits Jewish employees to take paid leaves of absence pursuant to section 5.14 for Rosh Hoshanah and Yom Kippur.[2]

Because the parties have stipulated to the relevant facts in this case, the matter is particularly appropriate for summary judgment. *See generally American Intern. Group, Inc. v. London Am. Intern.*, 664 F.2d 348 (2d Cir.1981); but see footnote 1, *supra*. The heart of plaintiff's case is his claim under the free exercise clause. As the United States Court of Appeals for the Second Circuit stated in *Brandon v. Board of Ed. of Guilderland Cent. Sch.*, 635 F.2d 971 (1980) *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981), *reh. denied*, 455 U.S. 983, 102 S.Ct. 1493, 71 L.Ed.2d 694 (1982):

> "To demonstrate an infringement of his free exercise rights, an individual must show 'the coercive effect of the [state] enactment as it operates against him in the practice of his religion.' *School District of Abington Township v. Schempp*, * * * 374 U.S. [203,] at 223, 83 S.Ct. [1560] at 1572 [10 L.Ed.2d 844 (1963)]. The analysis need not involve a court in determining the sincerity of one's religious beliefs, *United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944), but it does require that the court inquire into the relative importance of a particular religious ritual and the degree to which exercise of that practice is infringed by government action." *Id.* at 976.

Taking into consideration the kind of balancing alluded to in that case, it is clear that the facts in this case overwhelmingly support defendant. As a general rule it would be unreasonable to dispute that there must be some limitation of the extent to which employees, acting out of subjectively asserted religious beliefs, can claim exemption from the normal demands of their jobs. The question is not whether such a limitation is constitutionally acceptable but rather what degree of limitation is acceptable. In the present case the reasonableness of defendant's attempt to accommodate religious pluralism among employees with the practical need to control the employees' absenteeism is evidenced by the minimal nature of any infringement on plaintiff's rights. Plaintiff's allegation notwithstanding, section 5.14 provides an objective, evenhanded method of making determinations in an area prone to controver-

---

**2.** Plaintiff's allegation is misleading. Defendant has not singled out Jewish teachers for preferential treatment. Rather, the two days in question happen to fit within the definition of religious holidays under section 5.14 of the cba. Plaintiff's other vague reference to differences between "religious holidays" as applied to teachers and as applied to students (Amended Complaint ¶ 14) is inapt. Defendant's interest in regulating the vacation time of its employees is in no way identical to its interest in regulating that of its students.

sy—i.e., religious beliefs. The alternative to this system would require either blanket accession to any employee claiming subjective religious imperatives—and not merely with regard to leaves of absence—or some kind of case by case decision making, with all of the obvious burdens such would entail. The present system has evolved out of collective bargaining at which plaintiff, as a union member, was represented. There is no evidence that his religious views have been stigmatized by this process. Indeed, he was permitted to observe his religious holidays, albeit under the guise of a personal day. (This Court recognizes that plaintiff was thereby deprived of a day's leave that he might have used otherwise; but such imposition is minimal under the circumstances.) There is no evidence, for example, that plaintiff has lost a day's pay, been threatened with termination or faced any kind of retaliation or more than the most indirect pressure from defendant. Whatever minimal infringement on plaintiff's free exercise of religion might be discernible on the facts of this case, it cannot be said to rise to the level of a Constitutional violation.[3]

Plaintiff's claim under the establishment clause is similarly without merit. Although he refers to the establishment clause in his Amended Complaint and refers loosely in the plural to religious freedoms in his memoranda, he never articulates a basis for his claim. He does not assert, for example, that a particular religion is being advanced or suppressed by defendant's actions. Whatever the case may be, it is clear from the facts that defendant's action is not a "purposeful or surreptitious effort to express some kind of governmental advocacy of a particular religious message." *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 1363, 79 L.Ed.2d 604 (1984). It is more accurately stated that "whatever benefit to one faith or reli-

gion or to all religion," is involved in defendant's application of the cba to plaintiff, "is indirect, remote and incidental." *Id.* at 1364.

Plaintiff has not vigorously pursued the equal protection argument found in the second cause of action of his Amended Complaint. Because this Court has found plaintiff's First Amendment claims without merit, his equal protection claim—subject as it is to a less stringent standard of review in this situation—must similarly be denied. *See McGovern v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961).

Accordingly, it is hereby ORDERED that plaintiff's motion for summary judgment is denied and that defendant's motion for summary judgment of dismissal is granted.

---

**3.** It should be noted that *Ronald Philbrook v. Ansonia Board of Education, et al.,* 757 F.2d 476 (2d Cir.1985), a similar case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and the First Amendment, does not hold to the contrary. One of various factors distinguishing that case from the matter at bar was the offer by plaintiff (also a school teacher) to take the dates at issue in that case as personal days or, alternatively, to pay the school district the full cost of a substitute teacher rather than be docked a pro rata share of his salary.