Bonnie L. TUSKOWSKI, Plaintiff,

v.

William T. GRIFFIN, Jr. and Danny Stebbins Defendants.

No. 3:03CV1433 (DJS).

United States District Court,
D. Connecticut.

March 14, 2005.

John R. Williams, Norman A. Pattis, Williams & Pattis, New Haven, CT, for Plaintiff.

Joseph A. Jordano, Attorney General's Office Employment Rights, Hartford, CT, for Defendants.

### *MEMORANDUM OF DECISION*

SQUATRITO, District Judge.

Plaintiff Bonnie L. Tuskowski, a former Trooper with the Connecticut State Police,

brings a freedom of association and equal protection claim, as enforced through Sections 1983 and 1988 of Title 42 of the United States Code, against defendants, Sgt. William T. Griffin, Jr. and Capt. Danny Stebbins, also of the Connecticut State Police. Plaintiff alleges economic loss and emotional distress and seeks compensatory damages, punitive damages, attorneys' fees, and costs. Defendants deny liability on all counts and assert qualified immunity. The defendants move for summary judgment with respect to all counts of the complaint and the award of their costs, attorney fees and sanctions. For the following reasons, defendants' motion (dkt. # 17) is **GRANTED in PART and DENIED in part.**

### I. FACTS

The plaintiff, Bonnie Tuskowski is a Connecticut resident, who up until 2003 was employed as a commissioned police officer with the Connecticut State Police. The defendants are Sgt. William Griffin of the Internal Affairs Unit and Capt. Danny Stebbins, commanding officer for Tuskowski's Unit.

Plaintiff claims that the discipline the defendants imposed on her for an inappropriate comment she made to her union representative about her superior is a violation of her constitutional rights to free association and equal protection. On January 30, 2002, Tuskowski, along with her union representative, Jerry McGuire, met with Lt. Col. Lynch to discuss Tuskowski's return to work from medical leave. After the meeting concluded with Lynch, McGuire and Tuskowski went down to the personnel office to talk with Ron Savitsky, the Director of Personnel. Savitsky was not in the personnel office, so McGuire dropped off some paperwork. After having dropped off the paperwork, Tuskowski and McGuire were talking in the lobby of the personnel department when Sgts. Stine and Marchio walked by them.

When Marchio and Stine walked past Tuskowski, Tuskowski made a comment to McGuire. Marchio states that he heard Tuskowski say to McGuire, "Well look here what are the odds that I would meet this fucking asshole here." Officer Tuskowski claims she said to her union agent, "There's an idiot." After Tuskowski's comment, McGuire approached Marchio, acknowledged that Tuskowski made an inappropriate comment, and requested permission to handle the matter. Marchio reported the incident to his superior, who then requested that an internal investigation be conducted.

Defendant Griffin, of the Internal Affairs Department, was assigned to investigate the January 30, 2002 incident. Prior to the incident, Tuskowski had no prior involvement with, nor did she know, Griffin. He interviewed Stine, Marchio, Maj. Frank Griffin, and Tuskowski, who was accompanied to the interview by her attorney and union representative. Tuskowski claimed her conversation with McGuire the day of the incident was privileged.

Griffin filed a report sustaining the allegation that Tuskowski had been disrespectful and unprofessional toward Marchio. According to departmental protocol, Griffin's report was forwarded to the Labor Relations Unit, State Police Col. Barry, Lt. Col. Lynch, and Maj. Carpenter for input recommending an appropriate level of discipline. The Labor Relations Office, Barry, and the other high level ranking officials within the State Police chain of command recommended that Tuskowski be suspended for her conduct toward Marchio on January 30, 2002.

In May 2002, Stebbins was the commanding officer of the special weapons and permits unit to which Tuskowski was assigned. As the commanding officer for

that unit, Stebbins was responsible for imposing the recommended discipline for Tuskowski's conduct on January 30, 2002. Prior to June 4, 2002, Tuskowski had no prior dealings with, and did not know Stebbins. On May 23, 2002, Stebbins sent a letter to Tuskowski informing her that a pre-disciplinary hearing would be held on June 4, 2002 to discuss the January 30, 2002 incident.

Stebbins met with Officer Tuskowski and her union representative on June 4, 2002. Stebbins offered the lesser discipline of a one-day suspension held in abeyance, but Officer Tuskowski refused. On June 12, 2002, Stebbins imposed a one day suspension for Officer Tuskowski's January 30th, 2002 inappropriate remarks to Officer Marchio.

## II. DISCUSSION

Plaintiff brings this action pursuant to the First and Fourteenth Amendments to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code. Defendants move for summary judgment with respect to all counts of the complaint and raise qualified immunity as a defense. Each claim is discussed in turn herein.

## A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if, after discovery, the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)). A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. Freedom of Association

The associational activity at issue is not a matter of public concern, and plaintiff's claim therefore fails as a matter of law. "A public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern" *Cobb v. Pozzi,* 363 F.3d 89, 102 (2d Cir.2004). "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe,* —— U.S. ——, —— – ——, 125 S.Ct. 521, 525–26, 160 L.Ed.2d 410 (2004). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the

First Amendment." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

■ Tuskowski claims that the defendants unlawfully punished her for exercising her First Amendment right to associate. The associational activity at issue is criticizing her superior officer in an inappropriate manner by using the term "idiot." She does not have the right to insult her superior under the pretext of associational activity. Her conduct has no legitimate associational purpose.

Tuskowski argues that if private communication of union members to their designated representatives may be monitored for their content, then the membership right itself has been impeded. She asserts that the right of union membership would be meaningless if members could not communicate with their designated representatives, about union matters, free from the fear that a comment critical of a supervisor could get them disciplined.

Tuskowski aggrandizes the conduct at issue. Tuskowski was talking to McGuire in the hallway of the personnel department, where other officers could walk by. Tuskowski saw Marchio walk by and referred to him, audibly in inappropriate language, which he overheard and then reported to his supervisor. Tuskowski cannot escape discipline for insubordination simply because she addressed her words to her union representative.

## C. EQUAL PROTECTION

■ The Fourteenth Amendment to the United States Constitution provides that "no state shall … deny to any person within its jurisdiction the equal protection of the laws," and is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A plaintiff claiming denial of equal protection rights can proceed according to several theories. The United States Supreme Court has recently held that a plaintiff need not be a member of a traditionally "protected class" in order to allege an equal protection violation. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Instead, a "class of one" may maintain an equal protection claim, as long as the plaintiff alleges that he or she was treated differently than similarly situated persons. *See id.* In addition, the plaintiff must show that the different treatment was intentional and had no rational basis in order to properly allege an equal protection violation. *See, e.g., Ricketts v. City of Hartford,* 74 F.3d 1397, 1407 (2d Cir.1996).[1] A government official's decision "can be considered irrational only when [the official] acts with no legitimate reason for [his or her] decision." *Harlen Associates v. The Incorporated Village of Mineola,* 273 F.3d 494, 500 (2d Cir.2001) (internal quotation marks omitted).

■ Tuskowski's equal protection claim fails as a matter of law because she has not identified any similarly situated individuals. "To be considered similarly situated, employees must be 'similarly situated in all material respects.'" *Payne v. Huntington Union Free School Dist.,* 219 F.Supp.2d 273, 279 (E.D.N.Y.2002) (quot-

---

**1.** Prior to *Olech,* the Court of Appeals also required the plaintiff to show malice or bad faith on the part of the defendant in a selective treatment case. *See Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir.2001). In light of *Olech,* however, it is unclear whether intentional conduct may be sufficient alone to satisfy an equal protection claim. *See id.* For the purpose of deciding this motion, the court assumes that intentional conduct is sufficient to state an equal protection claim.

ing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997)). Tuskowski has submitted no evidence regarding her equal protection claim.

Defendants submitted a Department of Public Safety Labor Relations Unit Memorandum dated April 22, 2002 from Captain James Sweetman, Chief of Staff to Lt. Christopher Arciero, Labor Relations Unit. According to the memo:

> Typically, troopers who used improper language received either a counseling or written reprimand. One trooper received a 5 day suspension for using abusive language toward his supervisor. Most suspensions resulted when there were additional charges, such as conduct unbecoming an officer, display of proper attitude, insubordination, etc. TFC Tuskowski has been an employee since November 1982 and has a disciplinary history of a 30 day suspension in 2002, 14 days served and 16 held in abeyance, for insubordination combined with improper demeanor, improper language and disobeying a supervisor. The 16 days held in abeyance need not be served with this discipline as the situations are not substantially similar. The recommended range of discipline is a written reprimand to 1 day suspension.

(Dkt # 18, Ex. 12 at 1). Based on this memo, the discipline Tuskowski received falls within the department guidelines and, absent any evidence showing she has been treated differently than someone similarly situated, her claim fails.

### III. CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment (dkt.# 17) is **GRANTED in part and DENIED in part**. Defendants' motion is denied with respect to their requests for attorneys' fee and costs. Judgment shall enter for all defendants, on all counts. The Clerk of the Court shall close this file.