**Jane DOE, suing by and on behalf of her minor daughter, Mary DOE, Plaintiff,**

v.

**COVENTRY BOARD OF EDUCATION, Defendant.**

**No. 3:07CV00219 (DJS).**

United States District Court, D. Connecticut.

April 23, 2009.

228

John R. Williams, New Haven, CT, for Plaintiff.

James G. Williams, Williams Walsh & O'Connor, North Haven, CT, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Jane Doe ("the Plaintiff"), suing by and on behalf of her minor

daughter, Mary Doe, brings this action against the defendant, Coventry Board of Education ("the Defendant") pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"). The Plaintiff alleges that the Defendant knowingly failed and refused to protect Mary Doe from discrimination stemming from student-on-student sexual harassment, thus depriving her of access to educational opportunities and benefits. Now pending before the Court is the Defendant's motion for summary judgment. For the reasons set forth herein, the Defendant's motion for summary judgment (dkt. # 32) is **DENIED**.

## I. FACTS

For the purposes of this motion, the Court accepts as true undisputed facts and resolves disputed facts in favor of the Plaintiff where she provides evidence to support her allegations.

At the time of the events alleged in the complaint, Mary Doe was a student in the Coventry High School system. At the end of June 2005, a fellow student, Jesse, sexually assaulted Mary Doe off school grounds. Approximately one week after the alleged assault, Mary Doe notified her mother and her therapist that the sexual assault had occurred. Mary Doe's therapist then reported the incident to the Connecticut Department of Children and Families. On April 17, 2006, the Department of Children and Families notified the Coventry Police Department of Mary Doe's allegations.

During the 2005–2006 school year, both Mary Doe and Jesse were sophomores at Coventry High School. In August 2005, on the second day of school, the Plaintiff informed the principal of Coventry High School, Charles Britton ("Britton"), of the sexual assault, including the identities of both Mary Doe and Jesse. Other officials of the Defendant were also notified, including teachers and guidance counselors.

At this time, Mary Doe and Jesse shared a lunch period and a class. The Plaintiff and Mary Doe both repeatedly requested that Jesse be removed from both the lunch period and the class. With regard to the lunch period, Mary Doe was allowed to eat lunch in a conference room with a friend rather than eat in the cafeteria. There is some question as to whether Mary Doe actually did eat lunch in the conference room. The Plaintiff asserts that Mary Doe only ate in the conference room once, opting rather to stop eating lunch. (Pl's. Ex. 7, 64:23–65:6.) Mary Doe says that she continued to eat lunch in the conference room until she was put in night school. (Pl's. Ex. 5, 55:14–16.) With regard to the class, Mary Doe claims that Jesse was not removed from the class. (*Id.* at 54:1.)

On November 30, 2005, Mary Doe was out of school because she was receiving inpatient treatment at a hospital. The Plaintiff claims the hospitalization was the result of Mary Doe having ongoing contact with Jesse. On December 15, 2005, this hospitalization ended. From December 19, 2005 to February 2, 2006, Mary Doe entered Natchaug Hospital's Joshua Center Partial Hospitalization program.

On February 14, 2006, Jesse was arrested on charges of sexual assault in the first degree and risk of injury to a minor. On February 15, 2006, the Coventry Police Department and the Plaintiff notified the Defendant of the charges and arrest.

Mary Doe and Jesse were still enrolled in the same class at this time. The Plaintiff claims that, despite her repeated requests, the Defendant refused to remove Jesse from Mary Doe's class. According to the Plaintiff, only after the Plaintiff engaged a lawyer to send a letter to the school, and threatened to call a television

news team did Britton agree to ask Jesse to transfer to another class.

During the police investigation and immediately following the arrest of Jesse, Mary Doe complained to Britton that she received harassing name-calling, voice-mails, and a harassing letter from Jesse's friends. The name-calling included taunts, such as being called "slut," "cow," "whore," "liar," and "bitch." The letter given to Mary Doe by another student said "terrible things" about her. Mary Doe also received other forms of harassment, such as instant messages, while off school grounds. Jesse himself did not send any of these harassing statements, nor did Mary Doe complain of any coming from him. Mary Doe claims that this harassment lasted at least a year. In addition, both the Plaintiff and Mary Doe claim that they repeatedly informed Britton about the harassment. As a result, Britton spoke with both those individuals that had been harassing Mary Doe, as well as with Jesse himself.

Both prior to and following the arrest of Jesse, Britton, pursuant to advice of the Defendant's counsel, asked Mary Doe to provide him with details of the sexual assault. *Id.* at 15. Britton told the Plaintiff that he needed the details of the sexual assault to determine if it had been traumatic enough for the Defendant to take action. The Plaintiff refused to provide Britton with such details. The record is unclear as to whether the Defendant has a policy that is applicable to Mary Doe's situation. The Plaintiff has testified that there is no policy in the handbook of student-to-student sexual assault. The Plaintiff also testified, however, that after the arrest of Jesse, Britton told her that disciplinary action could not be taken against Jesse without some sort of proof that the

sexual assault was a violation of school board policy, and that the sexual assault was seriously disruptive of the educational process. The Plaintiff says this information was not conveyed to her until after Jesse's arrest.

Following the arrest of Jesse, in the spring of 2006, the Superintendent of Schools, Donna Bernard ("Bernard"), contacted the Coventry Police Department to obtain documentation and information concerning the allegations made by Mary Doe. The Coventry Police Department denied access to this information.

In April 2006, Mary Doe received Section 504 accommodations for her education.[1] Mary Doe subsequently did not attend school during regular hours, but rather attended the last period or two of day school and continued her classes in the night school program. The Section 504 accommodations were granted based on Mary Doe's diagnosed sleep disorder. The Plaintiff claims, however, that Mary Doe actually applied for Section 504 accommodations because she constantly saw Jesse at school and she was harassed by his friends. According to the Plaintiff, Mary Doe used her sleeping disorder to receive Section 504 accommodations because Britton had told her that the assault, harassment, and related side effects were not sufficient to allow Mary Doe to be moved into the night school program.

In August 2006, Jesse plead nolo contendere to the charges of sexual assault. He received reduced charges in juvenile court and was placed on probation for two years. As a condition of his probation, Jesse was ordered to have no contact with Mary Doe. The court, realizing that both Jesse and Mary Doe went to the same school, instructed Jesse to avoid Mary Doe. The

---

**1.** The Court notes that Section 504 of the Rehabilitation Act of 1973 is designed to eliminate discrimination on the basis of disability in any program or activity receiving Federal financial assistance. 29 U.S.C. § 794; 34 C.F.R. § 104.1.

Plaintiff alleges that Britton was fully aware of Jesse's conviction and sentence.

The Defendant asserts that in the spring of 2007, Bernard again requested documentation from the Coventry Police Department related to the sexual assault. The Coventry Police Department again denied access to this information.

On the first day of school of her junior year, Mary Doe and Jesse shared a class. Mary Doe believes that Jesse was only enrolled in the class for one day. She also says, however, that she saw him at least every other day.

Additionally, the Plaintiff and Mary Doe also say that Jesse was allowed to participate in regular school activities, such as dances and pep rallies. Although Mary Doe requested that Jesse not be allowed to attend the senior prom, she was told he had a "right to go." There was also a rumor that some students, as a "joke," had attempted to vote Mary Doe and Jesse "class couple."

Until graduation from Coventry High School in June 2008, Mary Doe continued her Section 504 accommodations. The Plaintiff claims that in night school, Mary Doe's socialization was only with people who had been suspended, arrested, or expelled, thus limiting her socialization to whoever was in trouble at school. Mary Doe believes that the school was willing to make accommodations to assist her in not seeing Jesse, but that the options discussed were inappropriate restrictions on her, rather than Jesse.

## II. DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Defendant moves the Court to grant summary judgment on the Plaintiff's Complaint. The Defendant argues that it is entitled to judgment as a matter of law because it was not deliberately indifferent to the allegations of harassment of which it had no-tice, and that it acted promptly, reasonably, and effectively to the harassment of which Mary Doe complained. The Plaintiff argues that summary judgment in favor of the Defendant is not appropriate given the circumstances of this case. The Court shall discuss the parties' arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when rea-

sonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. TITLE IX

■ Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Recipients of federal funds, therefore, may be liable for damages under Title IX for student-on-student sexual harassment. *See Doe v. E. Haven Bd. of Educ.,* 200 Fed.Appx. 46 (2d Cir. 2006); *see generally Davis v. Monroe County Bd. Of Educ.,* 526 U.S. 629, 644–45, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). There is no dispute that the Defendant receives federal funding.

■ In *Davis,* the Supreme Court held that in order to establish a claim based on student-on-student sexual harassment under Title IX, a plaintiff must demonstrate that: (1) the alleged harassment was so severe, pervasive, and objectively offensive that it deprived the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the sexual harassment; and (3) the funding recipient was deliberately indifferent to the harassment. *See Vance v. Spencer Cty. Pub. School Dist.,* 231 F.3d 253, 258–59 (6th Cir.2000) (citing *Davis,* 526 U.S. at 633, 119 S.Ct. 1661); *see also East Haven,* 200 Fed.Appx. at 47–8; *M. ex rel. Mr. and Mrs. M. v. Stamford Bd. of Educ.,* No. 3:05–cv–0177(WWE), 2008 WL 2704704, at *8 (D.Conn. July 7, 2008); *Doe ex rel. Doe v. Hamden Bd. of Educ.,* No. 3:06–CV–1680 (PCD), 2008 WL 2113345, at *5 (D.Conn. May 19, 2008); *Doe ex rel. Doe. v. Derby Bd. of Educ.,* 451 F.Supp.2d 438, 443 (D.Conn.2006); *Kelly v. Yale Univ.,* No. 3:01–CV–1591, 2003 WL 1563424, at *3

(D.Conn. March 26, 2003). Title IX liability for student-on-student sexual harassment is limited "to circumstances wherein the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis,* 526 U.S. at 645, 119 S.Ct. 1661.

■ Student-on-student sexual assault can constitute sexual harassment for Title IX purposes. *Derby,* 451 F.Supp.2d at 444 (citing *Soper v. Hoben,* 195 F.3d 845, 855 (6th Cir.1999); *Kelly,* 2003 WL 1563424, at *3). In this case, the Defendant is not liable for the sexual assault of Mary Doe because it did not occur on the high school grounds, and because the Defendant was not informed of the assault until after it occurred. The Defendant could, however, be liable for post-assault harassment. *See id.* (citing *Davis,* 526 U.S. at 645, 650, 119 S.Ct. 1661; *Kelly,* 2003 WL 1563424, at *3).

### 1. Severity of Harassment

The Defendant argues that the harassment of Mary Doe by Jesse's friends only occurred during two time periods, i.e., when the allegations first surfaced in early September of 2005, and immediately after Jesse was arrested five months later in February of 2006. The Defendant also argues that the minimal interactions and contact between Mary Doe and Jesse did not constitute continued sexual harassment, as required by *Davis. See Davis,* 526 U.S. at 652–53, 119 S.Ct. 1661. The Plaintiff argues that the harassment included both conduct of Jesse's friends, as well as Mary Doe's seeing Jesse in school. The Plaintiff also indicates that this harassment lasted for three years, and was so severe it required Mary Doe's hospitalization and removal from regular day classes at the high school.

■ Damages are not available for simple acts of teasing and name-calling among students. Rather, damages are available only where the harassment constitutes such severe gender-based mistreatment that it has a systemic effect of denying a victim the equal access to education that Title IX is designed to protect. *Id.* The most obvious example of student-on-student sexual harassment capable of triggering a damages claim would involve the overt, physical deprivation of access to school resources. *Id.* at 650, 119 S.Ct. 1661. It is not necessary, however, to show physical exclusion to demonstrate that a student has been deprived of an educational opportunity by the actions of another student. *Id.* at 651, 119 S.Ct. 1661.

■ The mere fact that Mary Doe and Jesse attended school together could be found to constitute pervasive, severe, and objectively offensive harassment so as to deny Mary Doe equal access to school resources and opportunities. The evidence shows that Jesse was permitted to continue attending school with Mary Doe for three years after the assault, leaving constant potential for interactions between the two. Although the Defendant argues otherwise, a reasonable jury could conclude that Jesse's mere presence at the high school "was harassing because it exposed [Mary Doe] to the possibility of an encounter with him." *Kelly,* 2003 WL 1563424, at *3.

As potential interactions between Mary Doe and Jesse are enough to preclude summary judgment in favor of the Defendant, actual interactions between the victim and her assailant could also be found to create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided to her at school. *See id.* The record shows that Mary Doe and Jesse shared a lunch period and class during their sophomore year,

and shared a class together the first day of their junior year. Mary Doe testified in her deposition that: "[Jesse] was always everywhere I looked. I always had to see him." (Pl's. Ex. 5, 40:20–21.) Mary Doe also stated that her "prom memories are pretty much trashed because [she] saw [Jesse] the whole time." (*Id.* at 12:20–21.) A jury could reasonably conclude that the circumstances were sufficiently pervasive, severe, and objectively offensive so as to detract from Mary Doe's educational experience.

Furthermore, a reasonable jury could conclude that harassment of Mary Doe by Jesse's friends created a hostile environment that interfered with Mary Doe's educational opportunities. Mary Doe's deposition states that Jesse's friends verbally harassed her in school, calling her "slut," "cow," "whore," "liar," and "bitch." Mary Doe also received from a fellow student a letter with "terrible things" written about her. Moreover, during Mary Doe's senior year, some students made an attempt to vote her and Jesse "class couple" as a supposed joke. Although the Defendant notes only two time periods in which Mary Doe was subject to harassment by Jesse's friends, Mary Doe's deposition states that it continued for at least a year.

There is also evidence that Jesse's friends harassed Mary Doe off of school grounds. Mary Doe testified in her deposition that she received a harassing instant message when she was at home. When asked the content of the e-mail instant message, Mary Doe stated "[y]ou better watch your back if my boy goes to jail. Stuff like that. Everybody already hates you." (*Id.* at 51:11–12.) Harassment by Jesse's friends off school grounds, even if on his behalf, is not itself actionable because *Davis* mandates that the Defendant cannot be liable for any deliberate indifference to harassment in a context over which

the Defendant does not have control. *Davis,* 526 U.S. at 645, 119 S.Ct. 1661. Nonetheless, evidence of "proxy-harassment" does bolster Plaintiff's claim concerning the severity and offensiveness of having to go to school in the same building as Jesse. *See Derby,* 451 F.Supp.2d at 445.

Although it is unnecessary to show physical exclusion to demonstrate that a student has been deprived of an educational opportunity, there is adequate evidence for a jury to find that the harassment caused Mary Doe to be hospitalized and forced her to leave regular day school. The Plaintiff claims that Mary Doe's hospitalization was caused by Jesse's presence in school. Moreover, the Plaintiff claims that the harassment also caused Mary Doe to enroll in the night school program. Entrance into the night school, which is different than regular day school attended by most high school students, would be sufficient to find a deprivation of educational opportunities, especially considering the Plaintiff's claims that Mary Doe's socialization in the after-school program was limited to students who were in trouble at school. In the Court's view, the Plaintiff has satisfied her burden here.

### 2. Notice to Coventry Board of Education

■ The Defendant next argues that it needed information about the sexual assault to move forward with any action regarding the matter, but was denied access to said information both by the Plaintiff and the Coventry Police Department. The Defendant also argues that following the February 2006 arrest of Jesse, there is no indication of anyone harassing or bothering Mary Doe, or that she notified any school authorities of any additional harassment. The Plaintiff argues that the Defendant was provided adequate information with regard to the sexual assault, and that the principal of Coventry High School

was aware of Mary Doe's constant harassment by Jesse's friends.

The Defendant may be liable for deliberate indifference to post-assault harassment once it became aware of the sexual assault and the related student harassment. *Davis,* 526 U.S. at 643, 119 S.Ct. 1661. A reasonable jury could find that the Defendant was given adequate notice of the assault and harassment at the beginning of, or during sophomore year. The Plaintiff states that she notified Britton of the assault on the second day of Mary Doe's sophomore year. Mary Doe asserts that she also informed guidance counselors and several teachers of Coventry High School. During sophomore year, both the Plaintiff and Mary Doe repeatedly asked the principal to remove Jesse from the class and lunch period he shared with Mary Doe. The Defendant acknowledges the request to remove Jesse from the lunch period, as it has admitted that it allowed Mary Doe to eat lunch in a conference room. Notification of Jesse's arrest was also sent to the Defendant on February 15, 2006 by the Coventry Police Department. Moreover, in her response to the Defendant's interrogatories, the Plaintiff stated that on February 15, 2006 she engaged a lawyer to send a letter to the school in regard to removing Jesse from the class he shared with Mary Doe.

A jury could also find that the Defendant was given adequate notice of Mary Doe's harassment by Jesse's friends. Although the Defendant argues that following the February 2006 arrest of Jesse, there was no indication of anyone harassing or bothering Mary Doe, she claims that the harassment increased after his arrest. Mary Doe also claims that she reported the harassment to Britton "all the time." (Pl's. Ex. 5, 49:20.) The Defendant agrees that Britton was aware of, at least, some harassment; indeed, he

spoke with the individuals Mary Doe had identified, as well as with Jesse himself. Moreover, the Plaintiff stated in her deposition that she would telephone the principal and say "[m]y daughter is being harassed, my daughter is being called names, my daughter is being forced to be with Jesse. My daughter is being tortured at school. What are you doing about it?" (Pl.'s Ex. 7, 70:22–71:1.) There is some question as to whether the Defendant was notified of Jesse's conviction in August of 2006. In her deposition, the Plaintiff asserts that the principal was aware of the conviction. This is a question of fact, which the Court may not resolve on summary judgment. In the Court's view, the Plaintiff has proffered sufficient evidence from which a jury could conclude that the Defendant had actual knowledge of Mary Doe's allegations of sexual harassment.

### 3. Deliberate Indifference

 The Defendant argues that it was not deliberately indifferent to the allegations of harassment because it acted reasonably and effectively to Mary Doe's complaints of harassment, and its actions were not clearly unreasonable in light of the known circumstances. Specifically, the Defendant argues that Britton spoke to the students harassing Mary Doe, and that Jesse was removed from extra-curricular activities, given restrictions on where and when he could walk in the hallways at the school, and was removed from classes. The Defendant also argues that Britton made several attempts to obtain information concerning the incident to formulate a response to Mary Doe's complaints. These actions were taken in the context of Mary Doe not attending school during regular school hours. The Plaintiff's argues that the Defendant was deliberately indifferent because it did not impose any disciplinary action upon the friends of Jesse who had harassed Mary Doe, and it did not remove Jesse from school, but instead isolated Mary Doe from her peers.

██ "Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, . . . and when remedial action only follows after a lengthy and unjustified delay. . . ." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 751 (2d Cir.2003) (internal citations and quotation marks omitted). The deliberate indifference "must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645, 119 S.Ct. 1661. "Deliberate indifference is more than a mere reasonableness standard that transforms every school disciplinary decision into a jury question." *Derby*, 451 F.Supp.2d at 446 (internal quotation marks omitted). Nevertheless, "deliberate indifference will often be a fact-based question, for which bright line rules are ill-suited." *Id.*

In this case, the evidence presented could permit a finding that the Defendant's response was unreasonably delayed so as to constitute deliberate indifference. The Plaintiff states that Mary Doe and Jesse shared both a class and lunch period from approximately August 2005 until Jesse's arrest in February 2006. The Plaintiff claims that they shared a class for a day junior year, and that no restriction was ever placed on Jesse with regard to attendance at school activities. Therefore, the fact that the Defendant took no disciplinary action for this time period could result in a jury finding of deliberate indifference. Should the jury find that the Defendant took adequate action by removing Jesse from Mary Doe's class in February 2006, it may still find this delay to be lengthy and unjustified.

In addition, Title IX requires that the school make an effort to remedy known peer harassment in a manner that is not "clearly unreasonable." *Davis*, 526 U.S. at

649, 119 S.Ct. 1661. The fact that the Defendant allowed Jesse to continue to attend school through graduation with no disciplinary action, despite his arrest for sexual assault and nolo contendere plea, may be found an unreasonable response to the situation. *See Derby*, 451 F.Supp.2d at 447. Given the circumstances, a jury could conclude that the Defendant should have known that this was a particularly risky situation necessitating its attention. *See Derby*, 451 F.Supp.2d at 448.

Moreover, a jury could also find that the Defendant's conduct in response to the situation was unreasonable. There is some disagreement as to whether Jesse was removed from Mary Doe's classes and whether he was removed from extracurricular activities. It is the Plaintiff's assertion that, sophomore year, Jesse was removed from Mary Doe's class in February 2006 only after the Plaintiff engaged a lawyer and threatened to call a television news team. Additionally, Mary Doe states in her deposition that she discovered the first day of junior year that she and Jesse shared a class. However, she notes that she believes he was only in the class for one day. The Plaintiff also claims that restriction was not placed on Jesse with regard to school activities, such as dances, pep rallies, and senior prom. A jury could find it unreasonable that the Defendant took action by removing Jesse from Mary Doe's class only under threat by the Plaintiff. Similarly, a jury could find it unreasonable that the school did not take action by ensuring Jesse was in different classes than Mary Doe. Given the totality of the high school experience, should the jury find that the class situation was reasonably managed, it could still find the Defendant's lack of discipline with regard to other school activities to constitute deliberate indifference.

The Defendant argues that its actions were clearly reasonable in light of Mary Doe's Section 504 accommodations, which limited her interaction with Jesse in day school. The Plaintiff argues, however, that it was the refusal of the Defendant to remove Jesse from day school that forced the Plaintiff to enroll Mary Doe in the night school program. Therefore, a reasonable jury could find that the Defendant's response, or lack thereof, rendered Mary Doe "liable or vulnerable" to Jesse's harassment, and that the Defendant's failure to provide Mary Doe with specific accommodations following Jesse's assault of her, was unreasonable given all the circumstances of which it was aware. *See Kelly*, 2003 WL 1563424, at *4 (citing *Davis*, 526 U.S. at 644–45, 119 S.Ct. 1661).

The record is also unclear as to whether the Defendant has a policy that is applicable to Mary Doe's situation. If there is a regulation that required Jesse, as a student arrested for sexual assault, to be put in the night school program, a jury could find the Defendant's lack of enforcement to be unreasonable. If there is not a policy applicable to Mary Doe's situation, a reasonable jury may find it unreasonable that the Defendant did not enact certain disciplinary measures. The fact that Jesse was not expelled is not itself dispositive of this issue, as "[a] victim of peer harassment does not have the right to any particular remedial demand, immediate expulsion of her alleged harasser, or a remedy that would expose the school to a constitutional or statutory claim on the part of the accused." *Derby*, 451 F.Supp.2d at 447 (internal quotation marks omitted); *see Davis*, 526 U.S. at 648–49, 119 S.Ct. 1661. Nevertheless, a jury may find the Defendant's refusal to take action unless Mary Doe provided the details of her sexual assault, to determine how traumatic it was, to be unreasonable so as to render the Defendant's action deliberately indifferent.

Finally, the Plaintiff stated repeatedly in her deposition that the Defendant did nothing in response to their complaints about Mary Doe's treatment by her peers and her interactions with Jesse. Both the Plaintiff and Mary Doe stated in their depositions that the principal answered their complaints by saying he "couldn't do anything about it." (Pl's. Ex. 5, 51:15); (Pl's. Ex. 7, 57:17–18.) Mary Doe indicated her sentiment about the Defendant's response to her complaints in her deposition: "I always complained that I had to see [Jesse] and they told me there was nothing they could do. He had a right to have his education and to do whatever he wanted pretty much." (Pl's. Ex. 5, 57:24–58:3). Mary Doe also stated "[t]hey tried to put restrictions on me and re[-]victimize [sic] me instead of doing anything about him. It was always I would have to change my schedule or I would have to do something different and he could do whatever the hell he wanted." (*Id.* at 61:19–23.)

Therefore, a jury could reasonably conclude from the evidence presented that the Defendant's conduct following its notice of Mary Doe's sexual assault amounted to deliberate indifference. Consequently, the Defendant's motion for summary judgment is denied.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (**dkt. # 32**) is **DENIED**. *The parties are instructed to notify the Court forthwith whether they consent to have this case referred to a United States Magistrate Judge for the purpose of conducting a settlement conference.*